**NICOLE SIOBHON NANTON, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

**VIRGIL LEON NANTON, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. Nos. 2007-033, 2007-034

Supreme Court of the Virgin Islands

December 23, 2009

467

468

THOMAS ALKON, ESQ., Christiansted, St. Croix, USVI, *Attorney for Appellant, Nicole Siobhon Nanton.*

ERIC S. CHANCELLOR, ESQ., Christiansted, St. Croix, USVI, *Attorney for Appellant, Virgil Leon Nanton.*

MATTHEW PHELAN, ESQ., Assistant Attorney General, Department of Justice, St. Thomas, USVI, *Attorney for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*. HODGE, *Chief Justice, concurring in part, dissenting in part*. CABRET, *Justice, concurring in part, dissenting in part*.

## OPINION OF THE COURT

(December 23, 2009)

SWAN, J. The issues in this case present unique disagreements among the Justices of this Court. Two Justices will reverse the convictions of Nicole Siobhon Nanton ("Nicole" or "Appellants") and Virgil Leon Nanton ("Virgil" or "Appellants") on Count Two of the Third Amended Information, charging aiding and abetting in "Carrying or using dangerous weapons,"[1] pursuant to title 14, sections 2251(a)(2) and 11(a)[2] of the Virgin Islands Code, whereas the third Justice will affirm the convictions on the same count. Similarly, on the issue of the sufficiency of the evidence on Count Three of the Third Amended Information, charging aiding and abetting in "Assault in the third degree," pursuant to title 14, sections 297(2) and 11(a) of the Virgin Islands Code, two Justices will affirm Virgil's conviction on Count Three, whereas the third Justice will reverse the conviction on this count. Only Virgil appealed his conviction on Count Three.

## I. FACTS AND PROCEDURAL HISTORY

On March 12, 2005, Dwayne Harvey ("Harvey") entered the Playaz Night Club ("the Club") on St. Croix with a group of friends. While at the Club, Harvey was informed by his friend that Nicole was watching him. Nicole proceeded to walk in proximity to Harvey. During their encounter, Nicole and Harvey verbally abused each other.

---

[1] Although the Third Amended Information refers to title 14, section 2251(a)(2) as "Possession of a Dangerous or Deadly Weapon," the crime in the Virgin Islands Code is specifically titled, "Carrying or using dangerous weapons."

[2] Title 14, section 11(a) states that "[w]hoever commits a crime or offense or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

470

Subsequently, when Harvey exited the Club, he observed Nicole standing at the passenger door of a silver Honda vehicle, cursing at him. Harvey walked towards Nicole; he stopped and looked at her. Nicole said, "yeah you, I am talking to you." As Harvey continued to walk towards his vehicle, he instantly noticed someone rapidly approaching him from his left side. As Harvey turned around, he immediately started evading punches from Nicole's brother, Virgil, as both men became embroiled in fisticuffs. During the altercation, Harvey observed Nicole next to him, with her hand elevated, holding an object in it. Suddenly, Harvey felt a painful blow to his head. Nevertheless, he continued to defend himself in the altercation with both Virgil and Nicole. Thereafter, an unidentified individual joined with Appellants, and all three acted collaboratively in attacking Harvey. During the altercation, Harvey was severely injured.

Harvey recounted that as the fight continued: "I felt a blow on top my head and on the back side of my head. So I took that. And right after that I felt a blow on the side of my body. I remember whining like that from pain. But I didn't stop." (Trial Tr. 53, Sept. 13, 2006.) Harvey confirmed that as Appellants continued their assault upon him, a third, unidentified male joined in the attack: "So it's now two guys and Ms. Nanton. So I am fighting these two guys and I am still feeling blows hitting me on my body. Felt like a piece of pick or something hitting you. I did not know what it was at the time and I still was doing okay . . . but then I started to get weak and I couldn't defend myself as good . . . ." (*Id.*)

Despite feeling enervated and experiencing excruciating pain, Harvey returned to the Club and called to his friend, Kennedy Fiest ("Fiest"), for assistance. Harvey recalled that as he approached Fiest, Fiest looked at him and asked, " 'what happened to you? What happened to you?' " (*Id.* at 54.) Harvey responded to Fiest's inquiry stating, "Kennedy, come now brother[,]" (*Id.*) and the two men returned to the parking lot outside the Club.

When Harvey exited the Club a second time, he observed the same silver Honda he had seen earlier, with Nicole standing next to it. Also, Harvey saw his assailants sitting together inside the same vehicle. He proceeded towards the silver Honda. Harvey kicked the rear window of the silver Honda and immediately collapsed, because of the potentially, life-threatening injuries he sustained during his altercation with Appellants and the unidentified individual. Fiest hurriedly transported Harvey to the hospital for medical treatment. Fiest testified that at the

471

hospital, he observed the same silver Honda he had earlier seen at the Club driving through the hospital's parking lot, but was unsuccessful in obtaining the license plate number.

The emergency room physician who treated Harvey testified that Harvey sustained life threatening injuries as a result of being stabbed multiple times with a knife. The physician estimated that based on the depths and dimensions of the stab wounds, the knife had a blade "at least four to six inches" in length and one inch in width (*Id.* at 143.) According to the physician at the hospital's emergency room, Harvey was stabbed four times: A four inch laceration under his arm, two chest stab wounds on his left side, and one stab wound over his left upper abdomen. The physician further testified that Harvey lost one-third to one-half of his blood and would have bled to death within ten to thirty minutes, if he had not been immediately transported to the hospital and treated for his injuries.

While Harvey was being treated in the emergency room, Virgin Islands Police Officer Juan Bermudez ("Officer Bermudez") questioned him about the attack. During the questioning, Harvey did not identify his assailants, and he told Officer Bermudez that the assault occurred when unknown assailants attempted to rob him of his gold necklace. However, Officer Bermudez testified that Harvey was in pretty bad condition at the time of the questioning and that he had to obtain Harvey's personal information from Harvey's wife. Harvey testified that he did not recall the interview with Officer Bermudez and that he may have been delusional at the time of the interview. Consistent with Harvey's testimony that he may have been delusional, the emergency room physician stated that when persons have lost the amount of blood that Harvey lost, "they don't really make a whole lot of sense." (*Id.* at 146.)

Two days after the attack, Harvey was questioned again by Virgin Islands Police Detective Anthony Hector ("Detective Hector"). Harvey testified at trial that during his interview with Detective Hector, he told the detective he thought Virgil had stabbed him. During direct examination, the prosecutor asked Harvey the following questions about the stabbing:

> Q. Is there anything today, sir, that causes you . . . to change your testimony or change what you said about who it was that stabbed you that night . . . ?

> A. No, sir.

. . .

Q. Is there any question in your mind that Nicole Nanton and Virgil Nanton were involved in the stabbing:

A. No, sir.

(*Id.* at 72.)

During the police investigation into the assault, Harvey identified Nicole in a photo array as the female involved in the assault upon him. Therefore, a warrant was issued for her arrest. Harvey also identified Virgil in a photo array as one of his two male assailants in the assault upon him. Accordingly, Virgil was also arrested.

Prior to the Playaz Night Club incident, Harvey had become acquainted with Nicole and had on one occasion given her a ride home from the East End Bar on St. Croix. On that occasion when Harvey and Nicole arrived at Nicole's apartment and upon a request from Nicole for Harvey to examine her computer, Harvey entered Nicole's apartment. While in Nicole's bedroom where the computer was located, Harvey was approached by Virgil, who began cursing at Harvey. An altercation ensued between Virgil and Harvey. The fracas continued until Harvey exited Nicole's apartment, while Appellants continued to yell and curse at Harvey. The pandemonium ceased when Nicole threw a conch shell at Harvey, as he departed the property in his truck. Therefore, when Harvey encountered Nicole on March 12, 2005 at the Club, and considering their prior altercation at Nicole's apartment, there were already existing between them animosity, acrimony, and ill-will, which simultaneously fueled their violent encounter at the Club. Importantly, their encounter at Virgil and Nicole's apartment would certainly enable Harvey to identify Appellants as his assailants at the Club and to identify them in the police's photo arrays.

Subsequently, Appellants were charged in the Third Amended Information with the following:

Count One . . . while aiding and abetting each other, with unlawful violence, did assault, with intent to commit murder, Dwayne Harvey, by stabbing him several times about the body with a knife causing serious bodily injuries, in violation of [t]itle 14 V.I.C. § 295(1) and 11(a), (**ASSAULT FIRST DEGREE/PRINCIPALS**).

473

<u>Count Two</u> . . . while aiding and abetting each other, with intent to use same unlawfully against another, did possess a deadly weapon, to wit, a knife, and used said knife during the commission of a crime of violence, namely Assault in the Third Degree, perpetrated upon Dwayne Harvey, in violation of [t]itle 14 V.I.C. § 2251(a)(2) and 11(a), (**POSSESSION OF A DANGEROUS OR DEADLY WEAPON**).

<u>Count Three</u> . . . while aiding and abetting each other, did with unlawful violence and with intent to injure, assault Dwayne Harvey, with a deadly weapon, to wit, a knife, in violation of [t]itle 14 V.I.C. § 297(2) and 11(a), (**ASSAULT THIRD DEGREE/PRINCIPALS**).[3]

(Third Am. Info., J.A. at 16a-b.)

It is noteworthy that the language in the Third Amended Information erroneously refers to "specific intent" in all three counts, even though the statutory language for the crime in Count Three, title 14, section 297(2), makes no reference to "intent to injure." The statutory definition of assault in title 14 section 291 of the Virgin Islands Code is devoid of the language "intent to injure." The language "with intent to injure" is an integral part of the definition for assault and battery under title 14 section 292 of the Virgin Islands Code, but it is not a part of the definition for assault in section 291.

Appellants were convicted of the crimes in Counts Two and Three.[4] The trial court sentenced Appellants to ten years incarceration and a fine of ten thousand dollars on the charge of "Carrying or using dangerous

---

[3] The Third Amended Information inaccurately states in Count Three that Appellants were charged with "unlawful violence and with intent to injure, assault Dwayne Harvey with a deadly weapon, to wit, a knife in violation of [t]itle 14, section 297(2) . . . ." However, title 14, section 297(2) expressly states that "[w]hoever, under circumstances not amounting to an assault in the first or second degree . . . (2) assaults another with a deadly weapon . . . shall be fined not less than $500 and not more than $3,000 or imprisoned no more than 5 years or both." Section 297(2) makes no mention of "unlawful violence" or "intent to injure." However, see 14 V.I.C. § 292, which defines assault and battery and the crime of "unlawful violence" and "intent to injure."

[4] Based on the jury verdict forms, Appellants were actually convicted on the charges of Count Three, which states, "while aiding and abetting each other, did with unlawful violence and intent to injure, assault Dwayne Harvey with a deadly weapon, to wit, a knife, in violation of [t]itle 14 of the Virgin Islands Code, [s]ection 297(2) and [s]ection (11) (a), assault in the third degree." (Trial Tr. 80, Sept. 14, 2006.)

weapons," under title 14, section 2251(a)(2), and four years, to be served concurrently, on the charge of "Assault in the third degree," under title 14, section 297(2). The trial court also ordered Appellants to each pay restitution to Harvey for the medical expenses he incurred as a result of Appellants' villainous assault upon Harvey. On February 21, 2007, Appellants perfected appeals of their convictions to this Court.

## II. JURISDICTION & STANDARD OF REVIEW

Title 4, section 32(a) of the Virgin Islands Code vests in this Court "jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court . . . ." On March 15, 2007, the trial court entered a final judgment against Appellants. Prior to this date, Appellants filed appeals with this Court on February 21, 2007. Nonetheless, "A notice of appeal filed after the announcement of a decision, sentence, or order — but before entry of the judgment or order — is treated as filed on the date of and after the entry of judgment." V.I. S. CT. R. 5(b)(1). Therefore, Appellants' appeals are timely filed.

 We review the omission of an element of a crime from the jury instructions for plain error when an appellant fails, during trial, to preserve the issue for appeal. *United States v. Dobson*, 419 F.3d 231, 236 (3d Cir. 2005). To correct an error which was not raised at trial, this Court must find: "(1) an error; (2) that is plain; . . . (3) that affected substantial rights," *Id.* (citing *United States v. Olano*, 507 U.S. 725, 732, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993)); *United States v. Davis*, 407 F.3d 162, 164 (3d Cir. 2005); *United States v. Syme*, 276 F.3d 131, 143 n.4 (3d Cir. 2002), and (4) the error seriously affects the "fairness, integrity, or public reputation of the judicial proceedings." *Dobson*, 419 F.3d at 236 (citing *United States v. Haywood*, 45 V.I. 800, 363 F.3d 200, 206-7 (3d Cir. 2004); *Johnson v. United States*, 520 U.S. 461, 467, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997) (internal quotations omitted).

Furthermore, we exercise plenary review over all issues involving a question of law, and a clearly erroneous standard over a trial court's finding of fact. *Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 524 (3d Cir. 2009). In a review for clear error, our power to review a trial court's decision is limited, because the trial court's finding must only be "sufficient to indicate the factual basis for the ultimate conclusion." *Giles v. Kearney*, 571 F.3d 318, 329 (3d Cir. 2009) (internal citations omitted.).

## III. ISSUES

1. Whether the omission of an essential element of a crime from the final jury instructions addressing the elements of the same crime merits reversal of a conviction on that crime.

2. Whether there was sufficient evidence to convict Appellants of aiding and abetting in assault with a deadly weapon, to wit, a knife, in violation of title 14 V.I.C. § 297(2) and 11(a).

Although Appellants appealed the provision in the trial court's judgment that mandates Appellants to pay the victim's medical expenses, (Appellant's Br., Virgil Nanton at 1); (Appellant's Br., Nicole Nanton at i.), Appellants withdrew this part of their appeals at oral argument. At oral argument, the following dialogue transpired between Appellants' counsel and Justice Swan:

> JUSTICE SWAN: Before your time expire[s], are you the one that raised the issue as to the compensation?
>
> MR. CHANCELLOR: Yes, we both raised that, but Your Honor —
>
> JUSTICE SWAN: And you saw *Marsham.*[5] I[s] *Marsham* applicable here? What about the statute?
>
> MR. CHANCELLOR: Your Honor, I would withdraw that argument. I think the Government was correct on that.
>
> . . .
>
> JUSTICE SWAN: Let me get this straight from you. The issue as to compensation you are withdrawing that?
>
> MR. CHANCELLOR: Correct.
>
> JUSTICE SWAN: On the record. Attorney Alkon are —
>
> MR. ALKON: I am withdrawing.

(Oral Argument, Tr., 27, Mar. 14, 2008.)

---

[5] *Gov't of V.I. v. Marsham*, 293 F.3d 114 (3d Cir. 2002).

## IV. DISCUSSION

### 1. Whether the omission of an essential element of a crime from the final jury instructions addressing the elements of the same crime merits reversal of a conviction on that crime.

There is a crucial omission in the jury instructions, pertaining to the elements of the crime in Count Two. In that count of the Third Amended Information, Appellants were charged with violating title 14, section 2251(a)(2)[6] of the Virgin Islands Code. The specific count charges that "while aiding and abetting each other with intent to use the same unlawfully against another, did possess a deadly weapon, to wit, a knife, and used said knife during the commission of a crime of violence, namely Assault in the Third Degree perpetrated upon Dwayne Harvey . . . ." (Third Amended Information, App. at A-16b.)

■ However, the trial court gave incomplete final jury instructions on the elements of the crime, because the instructions required the jury to find that Appellants possessed a dangerous weapon, to wit, a knife, during the commission or attempted commission of a crime of violence, (Trial Tr. 89, Sept. 14, 2006.), while omitting another element of the same crime. The jury instructions on the elements of the same crime made no mention of the statutory language of the crime, "with intent to use the same unlawfully against another." Furthermore, the omission from the jury instructions of the specific words, "with intent to use the same unlawfully against another," created a fatal deficiency in the jury instructions, which adversely impacted the legitimacy of the jury's guilty verdicts on Count Two. *See V.I. v. Smith*, 27 V.I. 332, 949 F.2d 677, 681-82 (3d Cir. 1991). Consequently, when the trial court instructed the jury on the elements of the crime that Appellee must prove to convict Appellants, and simultaneously omitted from the instructions the essential element of "with intent to use the same unlawfully against another," which is expressly enumerated in the language of § 2251(a)(2) and in the Third Amended Information, the trial court committed an incorrectible error,

---

[6] Title 14, section 2251 (a) (2) of the Virgin Islands Code reads in pertinent part:

Whoever . . . with intent to use the same unlawfully against another, has, possesses, bears, transports, carries or has under his proximate control, a dagger, dirk, dangerous knife, razor, stiletto, or any other dangerous or deadly weapon shall [be fined and/or imprisoned].

meriting reversal of the convictions on Count Two. Therefore, for innumerable reasons which follow, we reverse Appellants' convictions on Count Two and remand the cases for a new trial on this count.

■ It is well settled within the scope of the Fourteenth Amendment of the United States Constitution[7] that "[t]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Apprendi v. N.J.*, 530 U.S. 466, 477, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) (citing *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)) (internal quotations omitted); *see also United States v. Dobson*, 419 F.3d 231, 240 (3d Cir. 2005); *United States v. Alferahin*, 433 F.3d 1148, 1157 (9th Cir. 2006). Additionally, the Sixth Amendment[8] right to a speedy and public trial by an impartial jury "indisputably entitle[s] a criminal defendant to a jury determination that he is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Apprendi*, 530 U.S. at 477. "A defendant's due process rights are unquestionably implicated when his purported conviction rests on anything less than a finding of guilt as to all the elements of the crime." *Alferahin*, 433 F.3d at 1157. Moreover, with the exclusion of the element, "with intent to use the same unlawfully against another," from the jury instructions on the elements of the crime, Appellee's burden for securing a conviction against Appellants became less arduous, while simultaneously compromising Appellants' fundamental rights to a fair trial.

■ Furthermore, "jury instructions that relieve the Government of this burden violate[s] a defendant's due process right." *United States v. Korey*, 472 F.3d 89, 93 (3d Cir. 2007) (citing *Carella v. Cal.*, 491 U.S. 263, 265, 109 S. Ct. 2419, 105 L. Ed. 2d 218 (1989)). Importantly, jury instructions that relieve the prosecution of its burden of proving every element of an offense beyond a reasonable doubt "subvert the presumption of innocence accorded to accused persons and also invade the truth-finding task assigned solely to juries in criminal cases." *Id.* (citing *Francis v. Franklin*, 471 U.S. 307, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985)). Therefore,

---

[7] U.S. CONST. amend. XIV, § 1 states that "nor shall any State deprive any person of life, liberty, or property, without due process of law."

[8] In relevant parts, U.S. CONST. amend. VI states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State . . . ."

whether requested or not, the jury is to be instructed on each and every essential element of the offense charged, *Screws v. United States*, 325 U.S. 91, 65 S. Ct. 1031, 89 L. Ed. 1495 (1945), and failure to do so constitutes error. *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35(1999); *United States v. Gracidas-Ulibarry*, 231 F.3d 1188 (9th Cir. 2000).

■ Crucially, courts have informed that the omission of an essential element of a crime from jury instructions constituted error that affected a defendant's substantial rights. Foremost, in *United States v. Stansfield*, 101 F.3d 909, 922 (3d Cir. 1996), the United States Court of Appeals for the Third Circuit ("Third Circuit") concluded that the omission of the element "intent to kill" from the jury instructions "seriously affected the fairness, integrity or public reputation of judicial proceedings" and remanded the case for a new trial. Nearly two decades earlier, in *United States v. King*, 521 F.2d 61 (10th Cir. 1975), the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") reversed the trial court's decision, because the Tenth Circuit found that the trial court omitted an element of the crime of conspiracy from the jury instructions. Similarly, in *United States v. Bryant*, 461 F.2d 912, 921 (6th Cir. 1972), the United States Court of Appeals for the Sixth Circuit reversed the trial court's decision, because specific intent, which was an element of the crime charged, was excluded from the jury instructions. Undoubtedly, the circumstances in those cases are no different from these two cases. Moreover, when the element of "with intent to use the same unlawfully against another" was excluded from the jury instructions on the elements of the crime in Count Two, an unrectifiable deficiency was created in the jury instructions.

■ Nonetheless, the validity of a challenge to jury instructions must be considered against the complete jury instructions and the whole trial record. *See Byrd v. Lewis*, 510 F.3d 1045, 1050 (9th Cir. 2007). After an exhaustive review of the whole trial record, we conclude that Appellants were not afforded a fair trial, because the deficiency in the jury instruction was never cured. The unfairness of the trial resulted from the following. The trial record is replete with misdescription and mischaracterization of Count Two, the § 2251(a)(2) crime. To support this conclusion, the following is offered.

The primary example is the Count Two instructions that the trial court imparted to the jury during the trial. In its final instructions to the jury, the trial court stated the following:

> Before you find each defendant guilty of possession of a dangerous weapon during the commission of a crime of violence, you must find that the People have proven each of the following essential elements beyond a reasonable doubt. First, the defendants, Virgil Leon Nanton, Nicole Siobhon Nanton, an[d] another unknown individual, each aiding and abetting the other, did possess a dangerous weapon, to wit, a knife. Second, that defendant Virgil Leon Nanton and Nicole Siobhon Nanton, and another unknown individual, each aiding and abetting the other, *did possess a dangerous weapon during the commission of, or the attempt to commit a crime of violence*, to wit, assault in the third degree. And three, that the act occurred on or about March the 12th of the year 2005, on the island of St. Croix.

(Trial Tr. at 89, Sept. 14, 2006) (emphasis added.) The above instruction is consistent with the enhancement provision under title 14, sections 2251(a)(1) and (a)(2)(B) combined, but incongruous with section 2251(a)(2), the actual crime with which Appellants are charged. In Count Two of the Third Amended Information, Appellants are charged with aiding and abetting in violation of section 2251(a)(2) ("Carrying or using dangerous weapons"). (Third Amended Information, J.A. at A-16b.) Under § 2251(a)(2), the salient language in Count Two, absent the enhancement provision, is:

> [w]hoever, with intent to use the same unlawfully against another . . . possesses . . . any . . . deadly weapon shall [be fined and/or imprisoned].

14 V.I.C. § 2251(a)(2).

■ After scrutinizing the language of the statute, the unavoidable conclusion is that the words "with intent to use the same unlawfully against another," are a pivotal element of the crime. While the trial court's instructions to the jury included some of the elements in Count Two, the element of the crime, "with intent to use the same unlawfully against another," is conspicuously omitted from the final jury instruction on the elements of the crime. Therefore, the trial court erred when it instructed the jury on the specific elements of the crime codified in section 2251(a)(2) or in Count Two.

■ We summarily reject the argument that because the words, "with intent to use the same unlawfully against another," are mentioned in other parts of the trial record in a different context or in the overall final general instructions that such mention satisfies the elements requirement of the crime. For the following reasons, references to "with intent to use the same unlawfully against another" in other parts of the trial record other than in the final jury instructions on the elements of Count Two do not constitute "instructions on the elements of Count Two." First, when the trial court delivered the jury instructions on the elements of the crime in Count Two, the trial court specifically directed the jurors' attention to what the trial court contended are the elements of that crime; therefore, the jurors paid particular attention to the trial court's rendition of the final instructions concerning the specific elements of that crime. Second, the specific elements of the crime, as articulated by the trial court in the final instructions, are the only elements the jurors must consider in their deliberation, when they compared the evidence in the case with the trial court's specific instructions on the elements of the crime. Unfortunately, in the specific instructions on the elements of the crime in Count Two, the trial court neglected to include "with intent to use the same unlawfully against another," which is an underpinning element of the crime.

■ At the beginning of the trial, and after describing the charges, the trial court explicitly stated: "the final part of the trial occurs when I instruct you on the law which you are to use in reaching your verdict." (Trial Tr. 14, Sept. 13, 2006.) Consequently, the jurors were duty bound to await the recitation of the final instructions from which they could discern the elements of the crime. Therefore, when the jury was provided with specific instructions on the elements of Count Two which failed to correctly state the elements of the same crime, it logically follows that the jury did not consider all elements of the crime in reaching its verdict. Therefore, we conclude that when a jury considers the elements of the crime, the jury is required to be guided by the specific final jury instructions on the elements of the crime, and not guided by reference to or reliance upon the elements of the crime being mentioned in a different context elsewhere in the trial record.

In giving the final instructions to the jurors and informing them as to what the Third Amended Information states is the crime, the trial court stated that Appellant "with intent to use same unlawfully against another, did possess a deadly weapon, to wit, a knife, and used said knife during

the commission of a crime of violence . . . ." (Trial Tr. 79, Sept. 14, 2006) Although the trial court makes reference to the words, "with intent to use the same unlawfully against another" in that instant, the trial court thereafter, in reiterating the charges against Appellants, stated that Appellants were on trial for possession of a dangerous weapon and omitted the language "with intent to use the same unlawfully against another." (*See id.* at 80.) In that instance, the trial court failed to reference all the elements of the crime. Therefore, the omission of an element of the crime from the specific instructions created an inconsistent characterization of the section 2251(a)(2) crime against Appellants, and the jury received two irreconcilable versions of the elements of the same crime.

In cases where courts have found that the omission of an element of the crime from jury instructions did not affect the defendant's substantial rights, the courts also found that there was a functional equivalent of the elements of that crime in other charges against the defendant in the same trial. *See Alferahin*, 433 F.3d at 1157 (citing *Neder v. United States*, 527 U.S. 1, 15, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) and *United States v. Baldwin*, 987 F.2d 1432, 1439 (9th Cir. 1993)). In *Baldwin*, the Ninth Circuit found that the defendant's guilt on another count of his indictment, which was similar to the charge in question, was the functional equivalent of a finding on the missing element of the crime charged. *Id.* at 1439. There, the *Baldwin* court found that the omission did not affect the defendant's substantial rights. In contrast, however, the factual circumstances are different in this case; therefore, *Baldwin* is distinguishable from this case.

Importantly, no element in the crimes charged in either Counts One or Three is remotely synonymous with or tantamount to the element of "with intent to use the same unlawfully against another" in Count Two. Therefore, no functional equivalent of the missing element in the jury instructions on Count Two exists in either Counts One or Three.

The following is instructive. Appellants were charged with two other crimes that cannot be construed as a functional equivalent of section 2251(a)(2). In Count One of the Third Amended Information, the "intent" element requires a finding that the Appellants intended to murder, and in Count Three, according to the language of that count in the Third Amended Information, the "intent" element requires a finding that the Appellants intended to injure. (*See* Third Amended Information, J.A. at

482

A16a-b.) Separate and distinct, Count Two explicitly and succinctly requires that the jury find that Appellants intended to use a deadly weapon unlawfully against another. Obviously, the element of specific intent is used in two[9] different capacities or contexts in the Third Amended Information. The jury's verdicts that acquitted Appellants of Count One, but convicted Appellants on Count Two further buttress the conclusion that there was no functional equivalent of the omitted elements of the crime in Count Two to be found in the elements of the crime in Count One.

Further, we vehemently disagree with the dissent's contention on Count Two that the reasoning enunciated in *Cupp v. Naughten*, 414 U.S. 141, 146-47, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973), of "[a] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge," is applicable to this case. *Cupp* addresses a challenge of whether an instruction which was accurately provided by a trial court violated the defendant's rights. *Id.* However, *Cupp* never addresses the issue in this case, which is jury instructions in which there is an omitted element of the crime charged. Therefore, *Cupp* is distinguishable from the instant case.

■ Undeniably, the jury instructions were unclear, ambiguous, and omitted an element of the crime in Count Two; therefore, the jury failed to consider all the elements of the crime in support of a finding of guilt beyond a reasonable doubt on Count Two. The United States Court of Appeals for the Eleventh Circuit has expressed that, "if the instructions will mislead the jury or leave the jury to speculate as to an essential point of law, the error is sufficiently fundamental to warrant a new trial, despite [a] party's failure to state a proper objection." *Montgomery v. Noga*, 168 F.3d 1282, 1294 (11th Cir. 1999) (citing *Pate v. Seaboard R.R., Inc.*, 819 F.2d 1074, 1083, quoting *Cruthirds v. RCI, Inc.*, 624 F.2d 632, 636 (5th Cir. 1980)) (internal quotations omitted). Lastly, this case is not a case in which a part of an instruction had been erroneously given, which may be rectified by the totality of the jury instructions. This case involves an omission from the jury instruction of a pivotal element of the crime charged. Therefore, the circumstances in this case support reversal of Appellants' convictions on Count Two.

---

[9] *See* Footnotes 2 and 5.

## 2. Whether there was sufficient evidence to convict Appellants of aiding and abetting in assault with a deadly weapon, to wit, a knife, in violation of title 14 V.I.C. § 297(2) and 11(a).

During the police investigation into the assault, Harvey subsequently identified Nicole in a photo array as the female involved in the assault upon him; therefore, a warrant was issued for her arrest. Harvey also identified Virgil in a photo array as one of the two male assailants; therefore, he too was arrested.

 The jury convicted Appellants of Count Three, which charges aiding and abetting in "Assault in the third degree" in violation of title 14, sections 297(2) and 11(a). The following Third Circuit commentary is instructive on the issue of aiding and abetting under title 14, section 11(a):

> Under Virgin Islands law, third-degree assault includes causing or attempting to cause bodily harm with a weapon. 14 V.I.C. § 297(2). Criminal liability also extends to anyone who 'aids, abets, counsels, commands, induces or procures' the assault or attempted assault. 14 V.I.C. § 11(a). Liability as an aider and abettor requires proof that defendant associated himself with the venture, that he participated in it as something he wished to bring about, and that he sought by his words or action to make it succeed. *United States v. American Investors of Pittsburgh, Inc.* 879 F.2d 1087, 1103 (3d Cir. [1989]), *cert. denied*, 493 U.S. 955, 110 S. Ct. 368, 107 L. Ed. 2d 354 (1989); *United States v. Bey*, 736 F.2d 891, 895 (3d Cir. 1984). The government can show the requisite intent with evidence defendant encouraged or helped the perpetrator. *See e.g., Government of the Virgin Islands v. Navarro*, 513 F.2d 11, 11 V.I. 542 (3d Cir. [1975]), *cert. denied* 422 U.S. 1045, 95 S. Ct. 2662, 45 L. Ed. 2d 698 (1975).

*United States v. Xavier*, 29 V.I. 279, 2 F.3d 1281, 1288 (3d Cir. 1993)

 There is ample evidence that Virgil zealously participated in the assault in which Harvey was stabbed multiple times. Further buttressing the issue on aiding and abetting is the following: "[U]nder the theory of aiding and abetting, guilt of an accused in a criminal case may be established without proof that he or she personally did every act constituting the offense alleged." *Gov't of the V.I. v. Davis*, 35 V.I. 72, 79-80 (Terr. Ct. 1997) (citing *United States v. Walker*, 621 F.2d 163, 165 (5th Cir. 1980) (internal quotations omitted). Additionally, "[t]he law

recognizes that ordinarily, anything a person can do for himself or herself may also be accomplished through the direction of another person, as his or her agent, or by acting in concert with, or under the direction of another person or persons in a joint effort or enterprise." *Davis*, 35 V.I. at 80.

Harvey positively identified Virgil as one of his three assailants, and he testified that he had no doubt that "they[, including Virgil,] were involved in the stabbing." (Trial Tr. 72, September 13, 2006). Importantly, the trial record before us does not disclose that Virgil was unknown to Harvey or that he wore a mask or comparable attire to conceal his identity. Similarly, because of the previous violent encounter between Harvey and Appellants at Nicole and Virgil's apartment, Harvey would have no difficulty recognizing Virgil in a future encounter with him. Additionally, Harvey testified that he told the police that Virgil stabbed him and that Nicole struck him on the top of his head with an object that Harvey thought was a knife.[10] At trial, Harvey was questioned about whether there is anything that caused him to change his statements concerning who it was that stabbed him that night. Harvey was further questioned about the conflict between his prior statements to police and his direct examination testimony concerning the account he earlier gave to police; this conflict merely reflected on his credibility. *See United States v. Smith*, 459 F.2d 12, 13 (4th Cir. 1972).

 It is inconsequential for purposes of appellate review, whether Harvey's testimony reaffirming what he had told the police conflicted with his testimony on cross-examination. *United States v. Boone*, 279 F.3d 163, 189 (3d Cir. 2002) (citations omitted); *United States v. Stirone*, 311 F.2d 277, 284 (3d Cir. 1962) ("The circumstances that a witness'

---

[10] The dissent concludes that based on Harvey's testimony that he felt a "piece of pick or something hitting" him after the third person entered the fight, it must be assumed that it was the third person who stabbed Harvey. However, the evidence does not require such a finding. The quoted testimony is part of Harvey's description of what occurred when the third person entered the fracas. Harvey testified, "Then a next individual came and started fighting me as well. So it's now two guys and Ms. Nanton. So I am fighting these two guys and I am *still feeling blows hitting me on my body*. Felt like a piece of pick or something hitting you." (Trial Tr. 53, Sept. 13, 2006.) (Emphasis supplied.) It can be reasonably inferred from Harvey's statement that he is "still feeling" the blows that felt like a pick, and that he was feeling them *before* the third person entered the fracas. Moreover, when determining the sufficiency of the evidence, we "credit all reasonable inferences that support the verdict[]." *United States v. Perez*, 280 F.3d 318, 342 (3d Cir. 2002). The dissent's interpretation of this testimony does not pay such deference to the jury's verdict.

testimony may to some extent be self-contradictory does not prevent its constituting substantial evidence." (citations omitted)). American Jurisprudence is instructive and notes the following:

> The fact that a witness makes inconsistent statements with regard to the subject matter under investigation does not render the testimony nugatory or unworthy of belief; it is the province of the trier of fact to pass upon inconsistent statements and give or withhold assent to the truthfulness of the particular statement. Although there is some authority to the contrary, it has been said that inconsistencies in a witness's testimony go to credibility and do not affect the sufficiency of the evidence or destroy the probative force of the testimony as a matter of law.

29A AM. JUR. 2D *Evidence* § 137 (West Supp. 2008) (footnotes omitted). Indeed, "we are not at liberty to substitute our own credibility determinations for those of . . . the jury." *United States v. Dillon*, 532 F.3d 379 n.9 (5th Cir. 2008). "The reasonable doubt which will prevent conviction must be the jury's doubt and not that of this [C]ourt." *Stirone*, 311 F.2d at 284 (citations omitted).

 Mindful that it is for to the jury and not this Court to decide which part of Harvey's testimony to believe, we conclude that the evidence, viewed in a light most favorable to Appellee, was sufficient for a jury to find that Virgil aided and abetted in an assault with a deadly weapon.

In addition to the evidence that the assailants used a knife in their attack upon Harvey, the jury also could have found Virgil guilty as an aider and abettor. To emphasize, Harvey positively identified Virgil as a participant in the vicious assault upon him, and the jury could have reasonably inferred from Virgil's conduct, as illustrated in the trial record, that he acted collaboratively as an ally in stabbing Harvey. Indeed, viewed in a light most favorable to Appellee, the evidence confirmed that the attack on Harvey commenced when Nicole distracted Harvey by cursing loudly at him while Virgil attacked Harvey from the opposite direction.

Even if the onslaught began as fisticuffs, it instantaneously escalated into a stabbing with at least one of Harvey's three assailants stabbing him. As Harvey was being stabbed, all three assailants continued their invidious and unrelenting assault upon him.

The jurors were informed by the emergency room physician that the knife used in the assault upon Harvey was large, with a blade that

measured at least four to six inches in length and one inch wide, and that the stab wounds caused Harvey to bleed profusely.

The jurors could have reasonably concluded that this large knife was wielded and utilized in lacerating and stabbing Harvey throughout his upper body, causing severe and life-threatening injuries. Because Virgil actively participated in the onslaught upon Harvey, he must have known the knife was being used in the assault when he continued to assist the knife wielder, or was the knife wielder, while repeatedly assaulting Harvey.[11] It would be incredulous that with Harvey bleeding profusely, and with his assailants in extreme proximity to each other as they assaulted Harvey, that the assailants would not have known a knife was being used by one of them.

Harvey's testimony instructs that he had difficulty defending himself because his three assailants were acting in concert with each other. The jury could have reasonably determined that the three assailants acted collaboratively to seriously injure Harvey by assaulting him with their fists and stabbing him with a knife. The assailants continued assault upon Harvey, during which he was stabbed, graphically demonstrates that Virgil acquiesced in the knife wielder's conduct and irrefutably demonstrates that Virgil willingly participated in the knife wielder's criminal purpose of using the knife in the assault. *See Navarro*, 513 F.2d at 15. Importantly, after scrutinizing the trial record before us, we have

---

[11] The dissent stated that "even given the close proximity of the knife wielder, it does not necessarily follow that Appellant knew Harvey had been stabbed." In support of this proposition, the dissent adds that Fiest's "testimony indicates that he did not notice any blood or anything untoward until after Harvey kicked the vehicle and collapsed." While we agree with the dissent that it does not necessarily follow that Virgil and Nicole knew Harvey had been stabbed, such is not our standard of review. We view the evidence in a light most favorable to the Government and "credit all reasonable inferences that support the verdict[]." *Perez* 280 F.3d at 342. Thus, on appeal, we must accept the possibility that the jurors found that Appellants knew Harvey had been stabbed if such an inference was reasonable. Considering the size of the knife, the nature of the stab wounds, the amount of blood lost and the proximity of the assailant, the jury could have reasonably inferred that Appellants knew Harvey had been stabbed. Furthermore, even though Fiest's testimony may have indicated that he did not notice any blood on Harvey, Harvey testified when Fiest first saw him, Fiest stated "Dwayne, what happened to you? What happened to you?" (Trial Tr. 54, September 13, 2006.) Harvey's testimony seems to indicate that Fiest did notice something untoward about Harvey when he first saw him. The jurors had a unique opportunity to observe Harvey's demeanor when he provided testimony and it is not this Court's role on appeal to second guess the jury's interpretation of the testimony based on the cold record of the proceedings. *See Marra v. Philadelphia Hous Auth.*, 497 F.3d 286, 302 (3d Cir. 2007).

failed to uncover any evidence that Virgil made an overt attempt to abort his participation in the assault, or to disassociate himself from the assault upon Harvey.

 Finally, although evidence that the three assailants fled the crime scene together is not itself presumptive of guilt, it is among the circumstances that the jury could have considered in determining whether Appellants acted in concert with the knife wielder. *See id.* ("Although generally proof showing one to be an aider and abettor relates to events occurring before the charged crime of the perpetrator, evidence of acts subsequent to the commission of the crime is competent to prove a common design, and is significant in evaluating the conduct prior to the commission of the offense of one charged as an aider and abettor."); *see also United States v. Barber*, 429 F.2d 1394, 1397 n.4 (3d Cir. 1970) (*citing Corbin v. United States*, 237 A.2d 466 (D.C. App. 1968) for proposition that flight from the scene of a crime with the actual perpetrators is a circumstance that the jury may consider in judging his conduct as an aider and abettor). "The jury had a right and an obligation to consider all the facts and circumstances respecting the defendants in determining the question of their criminal liability as aiders and abettors." *Navarro*, 513 F.2d at 15. Our review of that evidence, viewed in a light most favorable to Appellee, convinces us that there was sufficient evidence to support the jury's verdicts that Appellants were guilty as principals in the crime of assault in the third degree (assault with a deadly weapon).

Based on our review of the trial record, we find no merit in Virgil's assertion that there was insufficient evidence to find him guilty as a principal to or as an aider and abettor in the underlying crime of assault in the third degree.[12] Title 14, section 297(2) provides, in pertinent part, that "[w]hoever . . . assaults another with a deadly weapon . . . shall be fined not less than $500 and not more than $3,000 or imprisoned nor more than 5 years or both." In order to prove that Appellants aided and abetted in the crime of assault in third degree, Appellee had to prove that Virgil assaulted Harvey with a deadly weapon or that Virgil aided, abetted, counseled, commanded or otherwise assisted the perpetrator in committing the assault with a deadly weapon upon Harvey. Again,

---

[12] Nicole does not appeal her conviction on the charge of assault in the third degree.

considering the evidence discussed above in the light most favorable to the Government, we conclude, without compunction, that the evidence is sufficient to support a jury determination that Virgil either stabbed Harvey, or encouraged, aided, abetted, counseled, commanded, or assisted Nicole or the unknown assailant in perpetrating the stabbing. Although Virgil points to conflicting evidence and challenges the credibility of some of the testimony, those were factual issues for the jury, and not for this Court to resolve. *See Schramm*, 75 F.3d at 159.

## V. CONCLUSION

The trial court's failure to include the element of "with intent to use the same unlawfully against another" in the jury instructions on Count Two created an error that violated Appellants' substantial rights. Consequently, the jury's verdicts that Appellants were guilty of the crime in Count Two are erroneous. For the above-mentioned reasons, we reverse the jury's guilty verdicts on Count Two and remand the cases for a new trial on Count Two, the crime of aiding and abetting in carrying or using dangerous weapons. Additionally, we affirm the jury's verdicts on Count Three of the Third Amended Information, the crime of aiding and abetting in assault in the third degree.

HODGE, *Chief Justice, concurring in part, dissenting in part.*

I concur with Justice Swan's conclusion that we should reverse the Count Two convictions as to both Nicole Nanton (hereafter "Nicole") and Virgil Nanton (hereafter "Virgil"). I write separately because I believe that an additional reason warrants the reversal. In addition, I dissent from the majority's conclusion that Virgil's[1] Count Three conviction for assault in the third degree should be affirmed.

### A. Appellants' Count Two Convictions Should Be Reversed

#### 1. *The Failure to Instruct on the "Intent to Use" Element Warrants Reversal*

I agree with Justice Swan that the Count Two convictions should be reversed on the grounds the trial court failed to specifically instruct the jury on the "intent to use" element. Title 14, section 2251(a)(2) of the

---

[1] Nicole did not appeal her Count Three conviction for assault in the third degree.

Virgin Islands Code requires the jury to find, among other elements, that the defendant had the "intent to use the [knife] unlawfully against another." 14 V.I.C. § 2251(a)(2).[2] Appellants argue that the judge "failed to include this essential element of the crime in his charge to the jury." (Appellant Virgil's Br. 12). They contend that the portion of the instructions which specifically instructs the jury as to each element of Count Two fails to mention the "intent to use" element.[3] Accordingly, Appellants claim that the jury was improperly led to believe that mere possession of a knife was a crime under section 2251(a)(2).

A trial court must instruct the jury on every essential element of the crime charged. *Virgin Islands v. Brown*, 685 F.2d 834, 839 (3d Cir. 1982). Clearly, "intent to use" is a required element of the crime of possession of a dangerous weapon with intent to use it unlawfully. Therefore, the failure to charge this required element constitutes error. However, in *United States v. Palmeri*, 630 F.2d 192, 201 (3d Cir. 1980), the Third Circuit Court of Appeals asserted that " '[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.' " (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S. Ct. 1730, 52 L. Ed. 2d 203 (1977)). Additionally, Federal Rule of Criminal Procedure 30(d)[4] states:

---

[2] Title 14, section 2251(a)(2) of the Virgin Islands Code, which is titled "Carrying or using dangerous weapons," applies to "whoever . . . with intent to use the same unlawfully against another, has, possesses, bears, transports, carries or has under his proximate control, a dagger, dirk, dangerous knife, razor, stiletto, or any other dangerous or deadly weapon." 14 V.I.C. § 2251(a)(2).

[3] That portion of the instructions reads:

Before you may find each defendant guilty of possession of a dangerous weapon during the commission of a crime of violence, you must find that the People have proven each of the following essential elements beyond a reasonable doubt.

First, that defendants, Virgil Leon Nanton, Nicole Siobhon Nanton, an[d] another unknown individual, each aiding and abetting the other, did possess a dangerous weapon, to wit, a knife. Second, that defendant Virgil Leon Nanton and Nicole Siobhon Nanton, and another unknown individual, each aiding and abetting the other, did possess a dangerous weapon during the commission of, or the attempt to commit a crime of violence, to wit, assault in the third degree. And three, that the act occurred on or about March the 12th of the year 2005, on the island of St. Croix.

(Trial Tr. 89-90.)

[4] Federal Rule of Criminal Procedure 30 is made applicable to criminal proceedings in the Virgin Islands Superior Court pursuant to Superior Court Rule 7, which states that: "[t]he practice and procedure in the [Superior] Court shall be governed by the Rules of the [Su-

Objections to Instructions. A party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate. An opportunity must be given to object out of the jury's hearing and, on request, out of the jury's presence. Failure to object in accordance with this rule *precludes appellate review, except as permitted under Rule 52(b).*

FED. R. CIV. P. 30. (emphasis added). The twin purposes of Rule 30 are to allow the trial court time to correct any mistakes and to prevent defendants from withholding their objection as a tactic for later attaining a new trial. *United States v. Brink*, 39 F.3d 419, 425 (3d Cir. 1994). Nonetheless, as an exception to Rule 30, Rule 52(b) states that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." FED. R. CRIM. P. 52(b).

In this case, Appellants had an opportunity to object to potential defects in the jury instructions after the instructions were read but they failed to do so. In fact, the trial judge facilitated this opportunity by holding a sidebar and asking counsel if they were satisfied with the instructions as they were read. All counsel replied "yes." (Trial Tr. 96-97, Sept. 14, 2006.) Because Appellants failed to object to the instructions at trial, this Court may review this issue only for plain error. *United States v. Guadalupe*, 402 F.3d 409, 410 n. 1 (3d Cir. 2005) (citing *United States v. Olano*, 507 U.S. 725, 734-35, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993)). Appellants bear the burden of establishing that "there [is] (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' " *Johnson v. United States*, 520 U.S. 461, 467, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997). An error affects substantial rights when it would change the outcome of the proceedings. *See Guadalupe*, 402 F.3d at 410 n.1. If all three elements are proven, we *may* exercise our discretion and grant relief if "the error affects the fairness, integrity or public perception of the proceedings." *Id.*

While I agree with much of Justice Cabret's plain error analysis, I also cannot say with certainty that the trial judge's failure to specifically instruct on the "intent to use" element did not affect the outcome of the

perior] Court and, to the extent not inconsistent therewith . . . the Federal Rules of Criminal Procedure . . . ."

proceedings. In *United States v. Dobson*, the Third Circuit Court of Appeals reversed a defendant's conviction for mail fraud because the district court failed to instruct the jury that specific intent to defraud is a necessary element of that crime. 419 F.3d 231 (3d Cir. 2005) (distinguishing *Gov't of the Virgin Islands v. Rosa*, 399 F.3d 283, 295 (3d Cir. 2005)). Even considering the instructions as a whole, the *Dobson* court found that there was a "reasonable likelihood" that the jury found the defendant guilty of mail fraud without finding beyond a reasonable doubt that she had the requisite intent to commit the crime. *Id.*at 240.

In this case, I consider it revealing that Appellants were found not guilty of assault in the first degree, which was charged in Count One pursuant to title 14, sections 295(1) and 11(a) of the Virgin Islands Code. Notably, when instructing the jury on first degree assault, which is defined as assault "with intent to commit murder," the trial judge correctly instructed on the essential element of "specific intent to murder." *See* 14 V.I.C. § 295(1). (Trial Tr. 88.) Having been clearly instructed that it must find that Appellants possessed specific intent to murder, the jury found Appellants not guilty on that count. Thus, consistent with the Third Circuit's conclusion in *Dobson*, I believe that there is a "reasonable likelihood" that the jury would have similarly found Appellants not guilty of Count Two had they been properly instructed that specific intent to use the knife unlawfully against Harvey was a required element. Accordingly, I join in Justice Swan's conclusion that the trial court's failure to specifically instruct on "intent to use" prejudiced Appellants, justifying a reversal of the Count Two convictions and a remand for a new trial on that count.

Moreover, my conclusion that Appellants' Count Two convictions should be reversed rests upon additional grounds and analysis.

### 2. Reversal is Also Warranted Because the Evidence Was Insufficient to Convict Appellants of Possession of, or Aiding and Abetting in the Possession of, a Dangerous Weapon

In Count Two, Appellants were charged with and found guilty of possession of, or aiding and abetting another in the possession of, a dangerous weapon pursuant to title 14, sections 2251(a)(2) and 11(a) of the Virgin Islands Code. The Third Amended Information, under which Appellants were charged, designates a knife as the deadly weapon at issue in this case. In his challenge to his Count Two conviction, Virgil argues that:

there was no evidence that Virgil possessed a knife, supplied a knife, handled a knife or even aided and abetted in the possession of the knife by its wielder. In fact, Harvey never testified that he even saw a knife, much less as to anyone who possessed it. He specifically disavowed knowledge of who stabbed him.

(Appellant Virgil's Br. 11). Nicole similarly argues that there was no evidence that "she supplied the knife, handled or disposed of it" or that "she expected the stranger to enter the fight." (Appellant Nicole's Br. 9).

Contrary to my fellow justices' assertion, no evidence was introduced at trial from which the jury could conclude that either Virgil or Nicole personally possessed the knife at any time during the altercation. In fact, Harvey was unable to identify which of the three attackers stabbed him, and the knife was never found and tested for fingerprints. My fellow justices place undue emphasis on Harvey's response of "[n]o, sir" to the People's inquiry "[i]s there any question in your mind that Nicole Nanton and Virgil Nanton were involved in the stabbing?" Rather than indicating that Harvey identified Nicole and Virgil as the person who actually committed the stabbing, Harvey's response merely supports a finding that Nicole and Virgil were involved in the general fight. Directly on point, however, is Harvey's response at trial when asked who stabbed him on March 12, 2005: Harvey unambiguously replied, "I don't know which one stabbed me, sir."[5] [6]

---

[5] Following that statement, counsel for the Government asked Harvey, on redirect, "[d]id you ever tell *the police* what you think Nicole might have struck you with?" Harvey replied, "Yes, sir . . . a knife." (Trial Tr. 115.) (emphasis added). We note, however, that although Harvey may have told *the police* in an earlier interview that he thought Nicole stabbed him, at no point *in his trial testimony* did Harvey tell *the jury* that either Nicole or Virgil stabbed him. In fact, he explicitly testified *at trial* to the opposite when he stated, "I don't know which one stabbed me, sir." (*Id.* at 113-14.) Additionally, Harvey testified *at trial* that, although he saw an object in Nicole's hand when she came towards him, he could not remember what the object was. (*Id.* at 82.) Also, when asked *at trial* whether he told Detective Hector that Nicole stabbed him, Harvey replied, "No, sir." (*Id.* at 80.)

My fellow justices also place undue emphasis on Harvey's response of "[n]o, sir" to the People's question "[i]s there anything . . . that causes you . . . to . . . change what you said about who it was that stabbed you that night . . . ?" However, nothing about Harvey's response can be interpreted as evidence that Harvey unequivocally identified Nicole or Virgil as the person who stabbed him. In fact, Harvey previously indicated, as the majority opinion points out, that he had been assaulted that night by unknown assailants in an attempt to rob him of his jewelry.

[6] My review of the transcript compels me to discuss some important, recurring evidentiary issues — namely, the Government's cumulative use of multiple witnesses to

(Trial Tr. 113-14.) 6 It follows, then, that the jury could not have found Appellants guilty of violating title 14, section 2251(a)(2) on the theory of actual, personal possession of the knife.

---

restate testimony already given by a previously-testifying witness and the trial court's allowance of improper hearsay testimony. For instance, the Government asked Detective Hector "[D]id Mr. Kennedy Feist *tell you something* that caused you generate this supplemental report? . . . What did he tell you?" (*Id.* at 158.) (emphasis added). Despite the fact that Feist himself had already testified about the same events during his earlier testimony and was no longer available to be cross-examined, the court overruled the hearsay objections and allowed the detective to answer. *See* 5 V.I.C. § 932(1) (hearsay exception permits witness to testify regarding statement made by previously-testifying witnesses only where previously-testifying witness is present at hearing and still available for cross-examination regarding the statement). In another example, the Government asked Detective Hector: "Did [Harvey] indicate to you at that time how he was hit in the head?" In response, the detective stated: "[h]e say that he was strike by an object, that he — I believe he said he wasn't sure if it was a bottle." (*Id.* at 185.) Despite an objection by Virgil's counsel, the court allowed the statement as "[o]nce again pursuant to the investigation." (*Id.* at 195.) Therefore, the detective was allowed to continue testifying as to what Harvey and Feist said during the interview, even though Harvey and Feist had already testified on that subject and neither of their statements were presented to refresh their recollections or otherwise. Numerous more examples abound in this case of such improper allowance of cumulative and hearsay testimony.

Importantly, the best witness to answer questions regarding, for instance, the object with which Harvey was hit in the head would be Harvey himself. And, in fact, Harvey testified earlier about being hit on the back of his head with something Nicole had in her hand. (Trial Tr. 53.) Thus, Detective Hector's testimony on this subject was cumulative and hearsay. The danger of allowing the Government to call several witnesses to testify on the same issue is that it may make the jury more likely to believe the Government's story. *See Habecker v. Copperloy Corp.*, 893 F.2d 49, 53 (3d Cir. 1990) (stating that allowing three witnesses to testify on the same issue could "easily" have made jury more likely to believe plaintiffs' theory); *see also* 5 V.I.C. § 885 ("[T]he judge may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will . . . create substantial danger of undue prejudice or of confusing the issues or of misleading the jury . . ."); FED. R. EVID. 403 (stating that relevant evidence may be excluded where its probativeness is outweighed by the needless presentation of cumulative evidence). This is especially true when one of the witnesses giving cumulative and hearsay testimony is a police officer. *See United States ex rel. Thompson v. Dye*, 221 F.2d 763, 769 (3d Cir. 1955) (Hastie, J., concurring) (noting that testimony from a police officer is likely to be considered very persuasive by a jury).

In this case, it appears that the Government, unsatisfied with Harvey's in-court testimony that he could not say which of the three attackers stabbed him, resorted to eliciting cumulative testimony from Detective Hector regarding what Harvey told him a year and a half prior. As discussed above, such use of a police officer's testimony is especially problematic.

Appellants, however, were simultaneously charged under title 14, section 11(a), which states that "[w]hoever commits a crime or offense or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." Thus, in order for the jury's verdicts to stand on Count Two, there must be sufficient evidence that Nicole and Virgil aided and abetted each other or another, namely the unidentified male, *in the possession of the knife* with the intent to use it unlawfully against Harvey. I note that my fellow justices conclude that Appellants can be found guilty of possession of a dangerous weapon under the aider and abettor statute if there is sufficient evidence that they aided and abetted *in the assault*, rather than in the possession of the knife. I believe such a conclusion is erroneous. *See, e.g., United States v. Lopez-Urbina*, 434 F.3d 750, 758 (5th Cir. 2005) ("Specifically, as it relates to a conviction for aiding and abetting a [firearm possession] offense, the prosecution must prove that the defendant act[ed] with the knowledge or specific intent of advancing the 'use' of the firearm. . . . [T]here must also be proof that the defendant performed some affirmative act relating to the firearm." (internal quotations omitted)); *Michigan v. Moore*, 470 Mich. 56, 679 N.W.2d 41, 50-51 (2004) ("[W]e specifically require the prosecutor to do more than demonstrate that the defendants aided the commission or attempted commission of the underlying crimes. . . . Rather, to convict a defendant of felony-firearm under an aiding and abetting theory, the prosecutor must present evidence proving that the defendant intentionally aided or abetted felony-firearm possession by specific words or deeds.").

"Liability as an aider and abettor requires proof that defendant[s] associated [themselves] with the venture, that [they] participated in it as something [they] wished to bring about, and that [they] sought by [their] words or action[s] to make it succeed." *United States v. Xavier*, 29 V.I. 279, 2 F.3d 1281, 1288 (3d Cir. 1993). "Although an aider and abettor need not perform the substantive offense, [] need not know its details, [] and need not even be present, [] it must be proven that the defendant consciously assisted the commission *of the specific crime in some active way*." *United States v. Campbell*, 702 F.2d 262, 266, 226 U.S. App. D.C. 283 (D.C. Cir. 1983) (internal quotations and citations omitted) (emphasis added); *accord United States v. Dickerson*, 508 F.2d 1216, 1217-18 (2d Cir. 1975).

In *Gov't of the Virgin Islands v. Navarro*, 11 V.I. 542, 513 F.2d 11 (3d Cir. 1975), which is cited by the majority for its discussion of the Count

Three convictions, the Third Circuit Court of Appeals held that there was sufficient evidence to find the defendants guilty as aiders and abettors under title 14, section 11(a).[7] The court stated that "[a]t a minimum, defendants' attacks upon the [victims] after the shooting ceased pointedly demonstrate that the defendants approved of Colon's [shooting of the victim] and give rise to an inference that they shared his criminal purpose of engaging in a general assault on the [victims]. *Id.* at 15. In this case, there is a total absence of evidence that the three (or any) of them conspired or planned the assault, much less the assault with the knife. Accordingly, assuming that the unidentified third person possessed the knife[8] and viewing the evidence in the light most favorable to the Government, as the standard of review requires, the jury could have found Appellants guilty of aiding and abetting the possession of the knife *only if* they found that Appellants' continued assault on Harvey as the third person stabbed him indicated that they clearly shared in the knife wielder's criminal purpose of *stabbing Harvey with the knife. See United States v. Camiel*, 689 F.2d 31, 36 (3d Cir. 1982) (quoting *Burks v. United States*, 437 U.S. 1, 17, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978)) (stating that an appellate court must find "substantial evidence, viewed in the light most favorable to the Government, to uphold the jury's decision.").

Clearly, a bystander, unaware that there was a man with a gun nearby, would certainly know a shooting had occurred once the gun had been fired, given the obvious noise a firearm makes when discharged. In contrast, it would not be as obvious to a bystander or a participant in a fight that someone nearby had been stabbed. Like the *Navarro* defendants, Virgil and Nicole continued to strike Harvey with their fists even after Harvey may have been was stabbed, probably by the third person. However, even given the close proximity to the knife wielder, it does not necessarily follow that Appellants knew Harvey had been stabbed with a knife. Although Dr. Moorman testified that, by the time Harvey reached the hospital, he had lost between one-third and one-half of his blood, even Harvey himself admitted that he did not realize, during the struggle, that

---

[7] The 1960's version of section 11(a), under which the *Navarro* defendants were convicted, is identical to the statute under which Virgil and Nicole were convicted.

[8] Given the lack of evidence that either Appellant possessed the knife and based on Harvey's testimony that he felt a "piece of pick or something" hitting him after the third person entered the fight, it must be assumed that it was the third person who stabbed Harvey.

he had been stabbed. In fact, he testified that it "[f]elt like a piece of pick or something hitting [him]" and that he "did not know what it was at the time and [he] still was doing okay." (Trial Tr. 53.) Moreover, there was no evidence that Harvey was visibly bleeding at the time of the assault. In fact, Harvey went back inside the club after the assault to find Feist, whose testimony indicates that he did not notice any blood or anything untoward until after Harvey kicked the vehicle and collapsed.

Furthermore, in finding substantial evidence of aiding and abetting, the *Navarro* court also relied upon evidence that the defendants had encouraged the shooter by shouting "kill him" and by passing around the gun. *See* 513 F.2d at 14. Here, however, there was no evidence of such blatant encouragement of the stabbing of Harvey by Nicole or Virgil, much less encouragement of possession of the knife for use in the fight.

Instead, this case is very analogous to *Oregon v. Anlauf*, 164 Ore. App. 672, 995 P.2d 547 (2000), in which the Court of Appeals of Oregon held that there was insufficient evidence to convict a defendant of unlawful use of a knife. In *Anlauf*, the defendant and another man assaulted a boy with their fists and beer bottles, and, toward the end of the assault, the other man revealed a knife and threatened to use it. 995 P.2d at 548. On appeal of his conviction of unlawful use of a knife, the appellate court found that "[t]here was no evidence that defendant knew that [the other man] was carrying the knife or that he directly participated in [the other man's] activities with the knife." *Id.* Accordingly, the court aptly held that:

> The state attempts to fill the void with arguments that it describes as pertaining to "circumstantial evidence" and "inferences." It is of course true that "circumstantial" as well as direct evidence can prove guilt, but there was no circumstantial evidence here that would permit the jury to find that defendant was guilty of unlawful use of the knife. . . . Insofar as the state's theory is that guilt, as an aider or abettor . . . can be predicated on a coconspirator's commission of a *separate crime* to which the defendant is in no way tied, except that the crime occurred during the course of the common criminal episode, [Oregon case law is] to the contrary. There was nothing to link defendant to the knife offense here except his "mere presence" when it occurred. There simply is no evidence here from which a trier of fact could draw reasonable inferences to support a finding that defendant committed the essential elements of the crime of unlawful use of the knife.

*Id.* at 550-51. (emphasis in original) (internal citations omitted). *See also United States v. Sorrells*, 145 F.3d 744, 753-54 (5th Cir. 1998) ("[I]n order to be convicted of aiding and abetting the [use or carrying of a firearm] offense [under federal law] . . . the defendant must act with the knowledge or specific intent of advancing the 'use' of the firearm in relation to the drug trafficking offense. . . . In addition to requiring proof of knowledge or intent for a conviction of aiding and abetting, 'there must also be proof that the defendant performed some affirmative act relating to the firearm.' . . . The link to the firearm is necessary because the defendant is punished as a principal for 'using' a firearm in relation to [another] offense, and therefore must facilitate in the 'use' of the firearm rather than simply assist in the crime underlying the [use or carrying of a firearm] violation.").

Even viewing the evidence presented in the light most favorable to the Government, it is clear that the Government failed to present "substantial" evidence that Appellants, verbally or by affirmative actions, "aid[ed], abet[ted], counsel[ed], command[ed], induce[d] or procure[d]" each other's or the third person's *possession or use of the knife* during the assault on Harvey. Therefore, I conclude that there was insufficient evidence presented at trial to sustain Appellants' convictions as principals in the crime of possession of a deadly weapon, as charged in Count Two, pursuant to the aider and abettor statute.

Accordingly, in addition to the trial court's failure to instruct on the "intent to use" element, the complete lack of evidence that Appellants possessed the knife and the lack of substantial evidence that either of the Appellants aided and abetted each other or the third person in the possession and use of the knife during the assault obliges me to reverse the Count Two convictions as to each Appellant. To hold otherwise would be to create an unwarranted precedent that, in all multiple-party assaults resulting in stab wounds or other injury, all persons involved in the fray should be found *per se* guilty of possessing the knife or other weapon used by one of the parties during the commission of the assault, regardless of the lack of evidence showing intent to use or knowledge of the existence of the knife or weapon on the part of the other parties. That, however, is not the law in this jurisdiction.

### B. Virgil's Count Three Conviction Should Be Reversed Because There Was Insufficient Evidence of Assault in the Third Degree

Additionally, as stated above, I dissent from the majority's conclusion that Virgil's Count Three conviction for assault in the third degree should

be affirmed. Virgil contends that the evidence was insufficient to prove that he assaulted Harvey in violation of title 14, section 297(2) of the Virgin Islands Code. Virgil supports his contention by arguing that the statements made by Harvey prior to trial, relating to his identification of Virgil, contradict his testimony at trial. I find it unnecessary, however, to address Virgil's particular arguments as to identification because my determinative reversal regarding Appellants' Count Two convictions commands that I also reverse Virgil's Count Three conviction.

Although title 14, chapter 13 of the Virgin Islands Code proscribes various types of third degree assault, the Government charged Appellants only under section 297(2) which narrowly refers to assault which is committed "with a deadly weapon." Because I believe that the evidence was insufficient to conclude beyond a reasonable doubt that Appellants possessed, or aided and abetted in the possession of, the knife, it necessarily follows that there likewise cannot be sufficient evidence to find that they committed assault with the knife as the deadly weapon. The People could have charged Appellants with assault in the third degree under title 14, section 297(4), for instance, which requires only that the People prove that the defendant "inflict[ed] serious bodily injury upon the person assaulted." Instead, the People elected to charge Appellants with assault using a deadly weapon and specified that such weapon was a knife. Therefore, the People must prove the specific facts relevant to that charge.

Undoubtedly, the evidence in this case reveals that both Appellants were involved in an assault on Harvey during which he was severely injured and nearly killed. However, evidence as to who actually used the knife to cause Harvey's stab wounds is severely lacking. Importantly, "[t]he sufficiency of the evidence warrants particular scrutiny when the evidence strongly indicates that a defendant is guilty of a crime other than that for which he was convicted, but for which he was not charged[, because] [u]nder such circumstances, a trier of fact, particularly a jury, may convict a defendant of a crime for which there is insufficient evidence to vindicate its judgment that the defendant is blameworthy." *United States. v. Salamanca*, 990 F.2d 629, 638, 300 U.S. App. D.C. 384 (D.C. Cir. 1993). "Compelling evidence that a defendant is guilty of some crime is not, however, a cognizable reason for finding a defendant guilty of another crime." *Id.* Here, although the evidence shows that Appellants were aggressors in a fight in which Harvey was severely injured, it is the

specific crimes with which Appellants were actually charged that must be analyzed by the jury and by this Court.

Since the Government chose not to charge Appellants with assault in the third degree under sections 297(3) or 297(4),[9] but instead charged him with assault with a deadly weapon under section 297(2), the Government was required to prove beyond a reasonable doubt that Virgil assaulted Harvey with the knife or aided Nicole or the unidentified male in his assault with the knife. Since the Government did not prove that Virgil stabbed Harvey, *see supra* Part A.2, there must be substantial evidence that he aided and abetted Nicole or the third person in the stabbing of Harvey.

In *Xavier*, the defendant, similarly charged under section 297(2), argued that there was a lack of evidence that he intended for his brother to assault the victims with the gun. *See* 2 F.3d at 1288. The court affirmed the defendant's section 297(2) assault with a deadly weapon conviction, stating:

> [S]ubstantial evidence supports defendant's conviction for third-degree assault as an aider and abettor. The overwhelming evidence showed defendant *helped provide his brother Franklin with a gun* after his brother made threatening remarks toward Brodhurst and Pennyfeather. After Franklin Xavier fired several shots at Brodhurst's car, *defendant yelled "Let's go, Franky," and the two sped away with defendant at the wheel.* In short, we believe defendant clearly "sought to bring about" the assault.

*Id.* (emphasis added). Unlike in *Xavier*, there is no evidence in the record that Virgil helped provide Nicole or the unidentified person with the knife, nor is there substantial evidence that he affirmed his part in the assault with the knife by helping the third person escape.[10]

---

[9] Title 14, section 297(3) criminalizes assault "with premeditated design and by use of means calculated to inflict great bodily harm," while section 297(4) applies to one who "assaults another and inflicts serious bodily injury upon the person assaulted."

[10] Contrary to my fellow justices' assertions that all three assailants fled the crime scene together or that Harvey saw all three assailants sitting together inside the silver Honda, there is little or no evidence that the three persons involved in the fight left in the same vehicle. The best evidence for this is that Nicole got into the back seat of the silver Honda, instead of the front passenger seat. There is no testimony, however, that specifically puts the knife-wielder

500

Additionally, case law from the jurisdictions interpreting similar aiding and abetting provisions is very enlightening. For instance, the California Court of Appeals, interpreting California's equivalent aiding and abetting provision, held that:

> the trial court [properly] clarified to the jury that, in order to convict Rudy of the assault with a deadly weapon charge, it had to find [1] that Rudy *knew Javier's purpose was to use a deadly weapon* on inmate Vukman, [2] that Rudy *intended that same purpose, and* [3] that Rudy, by act or advice, *aided, promoted, encouraged or instigated the assault with a deadly weapon.*

*California v. Navarro*, No. H022136, 2002 Cal. App. Unpub. LEXIS 11557, *10 (Cal. Ct. App. Dec. 13, 2002) (unpublished), *review denied* (Feb. 19, 2003), *cert. denied*, 540 U.S. 835, 124 S. Ct. 88, 157 L. Ed. 2d 64 (2003). (emphases added). Also, in *California v. Hoang*, 145 Cal. App. 4th 264, 275, 51 Cal. Rptr. 3d 509 (Cal. Ct. App. 2006), the California Court of Appeals elaborated:

> The mental state necessary for conviction as an aider and abettor . . . is different from the mental state necessary for conviction as the actual perpetrator. The actual perpetrator must have whatever mental state is required for each crime charged. . . . An aider and abettor, on the other hand, must "act with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense."

(emphasis in original). Thus, California courts require that the defendant encourage the assault by use of a deadly weapon *and* have the same purpose of assaulting with the deadly weapon. In order to prove that the defendant had the same purpose, the People must prove that the defendant knew the other person intended to use the deadly weapon during the assault. The same is required in this case. *See also Salamanca*, 990 F.2d at 640 (reversing conviction as to one defendant because, although defendant may have been

---

(or any other person for that matter) in the front passenger seat. Although a jury could circumstantially find that Nicole sat in the back seat because the unidentified man was in the front seat, such circumstantial evidence is not "substantial" enough to establish proof beyond a reasonable doubt that Virgil sought to bring about the third person's assault with a knife. In fact, it would be pure speculation.

guilty of some crime in connection with the attack, no evidence supports the conclusion that he "positively encouraged the perpetrator himself") (internal quotations omitted); *Campbell*, 702 F.2d at 286-87 (affirming trial court's grant of defendant's post-verdict motion for acquittal because there was no direct or circumstantial evidence that defendant consciously and actively aided the perpetrator in the commission of the specific crime charged); *Iowa v. Hustead*, 538 N.W. 2d 867, 870 (Iowa Ct. App. 1995) ("The important inquiry is whether the aider and abettor had knowledge that an act which is criminal was intended, and participated in some way *with the intent to encourage* the criminal act.") (emphasis added); *Ohio v. Trocodaro*, 36 Ohio App. 2d 1, 301 N.E.2d 898, 902-03 (Ohio Ct. App. 1973) ("If there was no prior conspiracy, and the act was committed upon a sudden quarrel, without the plaintiff in error having purposely inci[t]ed or encouraged the perpetrator thereof, he ought not to be held to have a guilty connection therewith, unless he did some overt act with a view-that is for the purpose-to produce the result he is charged with aiding and abetting, for in such a state of fact no criminal intent would exist.") (internal quotations omitted).

In the instant case, as in *Campbell*, there was no direct or circumstantial evidence that Virgil knew that either Nicole or the unidentified third person's purpose was to assault Harvey with the knife, nor is there substantial evidence that Virgil intended that same purpose. If anything, the evidence largely shows that some stranger saw Virgil and Nicole assaulting Harvey with their fists and unexpectedly decided to join the struggle. This is supported by the lack of evidence establishing that Virgil or Nicole even knew the unidentified man, much less that he had a knife and intended to use it unlawfully against Harvey.

As discussed at length previously with respect to the Count Two convictions, there was insufficient evidence establishing that Virgil aided or encouraged the use of the knife. Therefore, I conclude that Virgil's Count Three conviction for third degree assault cannot stand because there was also insufficient proof that he possessed, or aided another in the possession of, the deadly weapon. Accordingly, I would reverse on the Count Two convictions as to both Appellants and on the Count Three conviction as to Virgil.[11]

---

[11] As noted previously, Nicole did not appeal from her Count Three conviction; thus, her assault conviction is not before this Court.

CABRET, Justice, concurring in part, dissenting in part.

I concur with the majority's conclusion that the evidence was sufficient to convict Virgil Nanton ("Virgil") of assault in the third degree under Court Three of the Information. However, I respectfully dissent from the majority's conclusion that the trial court's jury instruction on the elements of possession of a dangerous weapon constituted plain error. Accordingly, for the reasons which follow, I do not believe that this Court has the discretion to reverse Virgil and Nicole Nantons' (collectively "the Nantons") convictions on this ground.

The Nantons assert that the trial court erred by failing to instruct the jury on the essential element of intent as part of its jury charge on possession of a dangerous weapon during the commission of a crime of violence. The record shows that the trial court instructed the jury as follows:

> Before you may find each defendant guilty of possession of a dangerous weapon during the commission of a crime of violence, you must find that the People have proven each of the following essential elements beyond a reasonable doubt.

> First, that defendants, Virgil Leon Nanton, Nicole Siobhon Nanton, an [sic] another unknown individual, each aiding and abetting the other, did possess a dangerous weapon, to wit, a knife. Second, that defendant Virgil Leon Nanton and Nicole Siobhon Nanton, and another unknown individual, each aiding and abetting the other, did possess a dangerous weapon during the commission of, or the attempt to commit a crime of violence, to wit, assault in the third degree. And three, that the act occurred on or about March the 12th of the year 2005, on the island of St. Croix.

(Trial Tr. vol. 2, 89, Sept. 14, 2006.) Inasmuch as the Code section defining the offense requires that the perpetrator have the "intent to use" the dangerous weapon, *see* 14 V.I.C. § 2251(a)(2), I agree with the Nantons and the majority that the trial court should have included the element of intent as part of the foregoing instruction. But that is not the end of the required analysis.

The record shows that the Nantons did not object to the trial court's instruction either prior to, during, or after the court charged the jury, even

though the court provided them opportunities to do so. Under Rule 30(d) of the Federal Rules of Criminal Procedure:[1]

> [a] party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate. An opportunity must be given to object out of the jury's hearing and, on request, out of the jury's presence. Failure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b).

Under Rule 52(b), "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." FED. R. CRIM. P. 52(b). Assuming, without deciding, that the Nantons did not intentionally waive their objection to the charge, *see Gov't of the V.I. v. Rosa*, 399 F.3d 283, 290-91 (3d Cir. 2005) (distinguishing between waived and forfeited errors), the error does not warrant reversal.

Under the plain error doctrine, "before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *Johnson v. United States*, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 1549, 137 L. Ed. 2d 718 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 732, 113 S. Ct. 1770, 1776, 123 L. Ed. 2d 508 (1993)). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 467, 117 S. Ct. at 1549, (citations and punctuation omitted). As I review the jury charge at issue for plain error, I am mindful that the Supreme Court has closely circumscribed the scope of the plain error doctrine and cautioned that

> [t]he Rule authorizes [appellate courts] to correct only particularly egregious errors, those errors that seriously affect the fairness, integrity or public reputation of judicial proceedings. In other words, the plain-error exception to the contemporaneous-objection rule is to be

---

[1] The Federal Rules of Criminal Procedure are applicable in the Superior Court of the Virgin Islands to the extent that the Federal Rules are not inconsistent with either procedural rules promulgated under the Virgin Islands Code or the Rules of the Superior Court. *See* Revised Organic Act § 21(c), 48 U.S.C. § 1611(c); SUPER CT. R. 7.

used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result. Any unwarranted extension of this exacting definition of plain error would skew the Rule's careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed.

*United States v. Young*, 470 U.S. 1, 15, 105 S. Ct. 1038, 1046, 84 L. Ed. 2d 1 (1985) (citations and punctuation marks omitted); *accord Johnson*, 520 U.S. at 466, 117 S. Ct. at 1548. Thus, "[u]nlike such defects as the complete deprivation of counsel or trial before a biased judge, an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Neder v. United States*, 527 U.S. 1, 9, 119 S. Ct. 1827, 1833-34, 144 L. Ed. 2d 35 (1999) (emphasis in original).[2]

As stated above, because section 2251(a)(2) includes the element of intent, the trial court erred in omitting that element from the charge at issue and that error is plain. *See generally Rosa*, 399 F.3d at 292 (discussing factors of the plain error analysis). I do not believe, however, that the omission of the intent element from the specific jury instruction at issue affected the Nantons' substantial rights. As recognized by the court in *Rosa*,

> [i]t is a rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court. The standard in analyzing the effect of the erroneous instructions is whether there was a reasonable likelihood that the jury prejudiced the defendant by applying the challenged instructions in a manner that violated the constitution.

*Id.* at 294-95 (citations and quotation marks omitted). "In determining the constitutional validity of jury instructions, a court should not view an individual instruction discretely, but rather should consider the instructions in

---

[2] I question the majority's reliance on *United States v. King*, 521 F.2d 61 (10th Cir. 1975), for the proposition that the omission of an essential element of an offense from jury instructions automatically requires reversal. The Tenth Circuit effectively overruled *King* on this ground in *United States v. Schleibaum*, 130 F.3d 947, 949 (10th Cir. 1997). *See United States v. Riggans*, 254 F.3d 1200, 1203 (10th Cir. 2001).

the context of the overall charge." *Id.* at 296 (citing *Cupp v. Naughten*, 414 U.S. 141, 146-47, 94 S. Ct. 396, 400, 38 L. Ed. 2d 368 (1973)).

In this case, I have considered the instruction at issue within the context of the trial court's instructions as a whole and conclude that there was not a reasonable likelihood that the jury prejudiced the Nantons by applying the challenged instruction in an unconstitutional manner. The trial court's jury instructions, read as a whole, informed the jurors that they needed to find that the defendants possessed a weapon with the intent to use it unlawfully against the victim. In fact, immediately before the trial court read the challenged instruction to the jury, the court explained to the jurors that the defendants were charged with possession of a dangerous weapon during the commission of a crime of violence and that

> under the laws of the Virgin Islands, it is an offense for any person to have, possess, bear, transport, carry, or have under his or her proximate control any instrument or weapon *with the intent* to use the same unlawfully against another during the commission of or the attempt to commit a crime of violence.

(Trial Tr. vol. 2, 88-89) (emphasis added). Additionally, the court instructed the jury that "[t]he crimes charge [sic] in this case are serious crimes that require proof of specific intent before a defendant can be convicted." (Trial Tr. vol. 2, 82-83.) Indeed, the court gave the jury a detailed explanation of how specific intent was to be determined.[3]

---

[3] The court explained specific intent as follows:

To establish specific intent, the People must prove that each defendant knowingly did an act which the law forbids, purposefully intending to violate the law. Such intent may be determined from all the facts and circumstances surrounding the case.

Intent may be proved by circumstantial evidence. Indeed, it can rarely be established by any other means. We simply cannot look into the head or mind of another person. It is physically impossible to do that. So while witnesses may see and hear and so be able to give direct evidence of what a defendant does or fails to do, they cannot give an eye witness account of the state of mind with which the acts were done or omitted.

But what a defendant does or fails to do may indicate intent or lack of intent to commit a particular offense charged. In deciding the issue of what a person knew or what a person intended at a particular time, you may consider any statements made or acts done by that person, and all other facts and circumstances received in evidence which may aid you to determine that persons' knowledge or intent.

You may infer, but you certainly are not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. It

Moreover, the Information specifically charged Virgil and Nicole with possessing a knife "with intent to use same unlawfully against another." (Trial Tr. vol. 2, 79.) The trial judge read the Information to the jury at the beginning of the trial, and again during the final jury instructions. After reading the Information to the jurors during the final instructions, the trial court explained that the Government had the "burden of establishing each of these elements by proof beyond a reasonable doubt." (Trial Tr. vol. 2, 83.) Finally, consistent with the Third Circuit's admonition in *Rosa*, the trial court instructed the jurors they were required to consider all the instructions "as a whole" and that they "must not single out one or more instruction and disregard the others." (Trial Tr. vol. 2, 66.) *See id.; see also Cupp*, 414 U.S. at 146-47, 94 S. Ct. at 400. Under these circumstances, I do not believe there is a reasonable likelihood that the jurors prejudiced the Nantons by applying the instruction at issue in an unconstitutional manner. *See id.* Accordingly, the trial court's error did not affect the Nantons' substantial rights.

Furthermore, even if the error did affect the Nantons' substantial rights, it must have "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings before [this Court could] exercise its discretion to correct the error." *Johnson*, 520 U.S. at 469-70, 117 S. Ct. at 1550 (citation and quotation marks omitted). The erroneous instruction did not have this effect.

The evidence establishing that the knife was intentionally used to stab Harvey was overwhelming. *See Johnson*, 520 U.S. at 469-70, 117 S. Ct. at 1550.(discussing overwhelming evidence supporting element erroneously omitted from jury instruction). Harvey was forcefully stabbed four times, receiving life-threatening injuries. Describing the gravity of these injuries, the emergency room physician testified that an "upper abdomen stab wound actually went through the large intestine, went pass [sic] the kidney, taking off the blood supply to the kidney so it completely disconnected the kidney from its blood supply and it went into the muscles of the back." (Trial Tr. vol. 1, 143.) Considering the nature of this wound and the other wounds inflicted by the knife wielder, I am confident, beyond a reasonable doubt, that even absent the deficient

---

[sic] entirely up to you, however, to decide what facts to find from the evidence received during this trial.

(Trial Tr. vol. 2, 83-84.)

instruction, the jury would have found that the knife was used intentionally against Harvey. *See Whitney v. Horn*, 280 F.3d 240, 259 (3d Cir. 2002) (even though trial court erroneously instructed the jury concerning the defense of voluntary intoxication as it applied to the specific intent to kill, error was harmless in light of overwhelming evidence of intent, which included multiple stab wounds about the victim's body); *see also, Neder*, 527 U.S. at 17, 119 S. Ct. at 1837 (concluding that error in omitting element from jury instruction was harmless where "reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error"). Indeed, the Nantons never argued at trial, and do not argue on appeal that the knife wounds were accidentally inflicted, and I cannot fathom how any reasonable juror could have found that the multiple stabbings were anything but intentional given the nature of the wounds. The Nantons do

> not suggest that [they] would introduce any evidence bearing upon the issue of [intent to use the knife] if so allowed. Reversal without any consideration of the effect of the error upon the verdict would send the case back for retrial-a retrial not focused at all on the issue of [intent to use the knife], but on contested issues on which the jury was properly instructed.

*Neder*, 527 U.S. at 15, 119 S. Ct. at 1836-37.

There is yet one more reason why I am confident that the trial court's erroneous instruction did not seriously affect the fairness, integrity or public reputation of the Nantons' trial. In addition to finding the Nantons guilty of possessing a dangerous weapon during the commission of a crime of violence, the jury found them guilty of third degree assault. To reach the latter verdict, the jurors needed to find, as instructed by the trial court, that the Nantons, "and another unknown individual, each aiding and abetting the other did assault Dwayne Harvey by stabbing him about the body . . . [and] that a deadly weapon was used, to wit, a knife." (Trial Tr. vol. 2, 90.) Thus, notwithstanding the error in the instruction on Count Two, we know with certainty from the jury's verdict on Count Three that

the jurors found the Nantons intentionally assaulted Harvey with a knife.[4] The jury's determination that the Nantons were guilty of assaulting Harvey with a knife under Count Three is the "functional equivalent" of finding that they intended to use the knife against him, as required for a conviction under Count Two of the Information. *See Neder,* 527 U.S. at 14, 119 S. Ct. at 1836 (recognizing that under the "functional equivalence" test, the omission of an element from the court's charge is harmless "where other facts found by the jury are 'so closely related' to the omitted element 'that no rational jury could find those facts without also finding' the omitted element" (quoting *Sullivan v. Louisiana,* 508 U.S. 275, 281, 113 S. Ct. 2078, 2082, 124 L. Ed. 2d 182 (1993)); *State v. Hazard,* 745 A.2d 748, 753-54 (R.I. 2000) (ruling that erroneous jury instruction on element of crime was harmless error because the jury made findings on other charged crimes that were the "functional equivalent" of the erroneously charged element); *see also United States v. Anderson,* 859 F.2d 1171, 1176 (3d Cir. 1988) (ruling that where district court omitted essential element of crime from instructions, but jury unanimously found the defendant guilty of other charges establishing facts of omitted element, "it cannot be said that the district judge's error in any way prejudiced the jury's deliberations or resulted in manifest injustice." (citation omitted)).

Under these circumstances, and considering the overwhelming evidence that the knife was used intentionally against Harvey, I believe that the erroneous charge was harmless, did not result in a miscarriage of justice, and is not grounds for reversal. *See Johnson,* 520 U.S. at 470, 117 S. Ct. at 1550; *Francis v. People, S. Ct. Crim.* No. 2007-093, 2009 V.I. Supreme LEXIS 44, at *22 (V.I. Nov. 19, 2009) ("Because the

---

[4] While it is true, as recognized by Chief Justice Hodge, that the jury evidently found that the Nantons did not assault Harvey with the specific intent to commit murder, I cannot discern how the jury's acquittal of the Nantons on this charge provides a basis for finding a reasonable likelihood that, but for the erroneous charge, the jury would have similarly found that the Nantons did not have the specific intent to use a knife under Count Two. Although it was disputable, based on the evidence, whether the Nantons had the intent to murder Harvey, the jury found that the Nantons assaulted Harvey with a knife, and there was overwhelming evidence that the knife was used intentionally against Harvey. Likewise, because the jury necessarily found, in its Count Three conviction, that the Nantons intentionally used a knife against Harvey, I question the majority's assertion that "no element in the crimes charged in either Count One or Three is remotely synonymous with or tantamount to the element of 'with intent to use the [knife] unlawfully against another' in Count Two."

'unauthorized by law' element was 'uncontested and supported by overwhelming evidence,' and since any arguable error did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings . . . the trial court's instruction does not constitute plain error and cannot form the basis for reversing Appellant's convictions.").

Because I find that the Court does not have the discretion to reverse the Nantons' convictions under Court Two due to the erroneous jury charge, I believe it is also necessary to review their assertion that the evidence was insufficient to support their convictions. Possession of a dangerous weapon during the commission of a crime of violence is defined under title 14, section 2251(a)(2)(B) of the Virgin Islands Code, which provides in pertinent part that whoever:

> (2) with intent to use the same unlawfully against another, has, possesses, bears, transports, carries or has under his proximate control, a dagger, dirk, dangerous knife, razor, stiletto, or any other dangerous or deadly weapon shall —
>
> . . . .
>
> (B) if he has previously been convicted of a felony, or has, possesses, bears, transports, carries or has under his proximate control, any such weapon during the commission or attempted commission of a crime of violence (as defined in section 2253(d)(1) hereof) shall be fined $10,000 and imprisoned not more than fifteen (15) years, which penalty shall be in addition to the penalty provided for the commission of, or attempt to commit, the crime of violence.

A defendant need not personally possess a knife, however, to be punished as a principal under section 2251(a)(2)(B). A principal is defined under title 14, section 11(a) to include not only individuals who personally commit the offense, but also anyone who "aids, abets, counsels, commands, induces or procures its commission . . . ." Consequently, criminal liability extends to Virgil and Nicole if they personally possessed the knife or if they aided, abetted, counseled, commanded, induced or procured the commission of the crime charged. "Liability as an aider and abettor requires proof that [the] defendant associated himself with the venture, that he participated in it as something he wished to bring about, and that he sought by his words or action to make it succeed." *United States v. Xavier*, 2 F.3d 1281, 1288, 29 V.I. 279 (3d Cir. 1993) (citing *United States v. American Investors of Pittsburgh,*

*Inc.*, 879 F.2d 1087, 1103 (3d Cir. 1989)), "The government can show the requisite intent with evidence [the] defendant[s] encouraged or helped the perpetrator." *Id.* (citing *Gov't of V. I. v. Navarro*, 513 F.2d 11, 11 V.I. 542 (3d Cir. 1975)). Accordingly, in this case the Government could establish criminal liability under section 2251(a)(2)(B) by proving, *inter alia*, that Harvey was stabbed with a knife during the assault and that Nicole and Virgil either perpetrated the stabbing or, through their participation in the assault, encouraged or helped the perpetrator. *See id.* at 1288-89.

Based on the evidence discussed in the majority opinion, including the discussion on the sufficiency of the evidence to support Virgil's conviction under Count Three, I believe there is ample evidence that Nicole and Virgil either perpetrated the stabbing or participated in the attack by helping the perpetrator. Harvey positively identified Nicole and Virgil as two of his three assailants, and he testified that he had no doubt that "they were involved in the stabbing." (Trial Tr. vol. 1, 72.) In addition, Harvey testified that he told the police that Virgil stabbed him and that Nicole struck him on the top of his head with an object that Harvey thought was a knife. When questioned at trial whether there was anything that caused him to change his statements about who it was that stabbed him that night, Harvey replied, without any apparent equivocation, "No, sir." (Trial Tr. vol. 1, 72.) To the extent that Harvey provided conflicting testimony during his cross-examination, such conflicts merely reflected on his credibility, which was for the jury to assess. *See Smith v. People*, 51 V.I. 396, 401 (V.I. 2009) (citing *United States v. Boone*, 279 F.3d 163, 189 (3d Cir. 2002); *United States v. Stirone*, 311 F.2d 277, 284 (3d Cir. 1962))). As an appellate court, " '[W]e are not at liberty to substitute our own credibility determinations for those of . . . the jury.' " *Id.* (quoting *United States v. Dillon*, 532 F.3d 379, 391 n.9 (5th Cir. 2008). " 'The reasonable doubt which will prevent conviction must be the jury's doubt and not that of this [C]ourt.' " *Id.* (quoting *Stirone*, 311 F.2d at 284). While there were plainly conflicts in the evidence relating to the Nantons' conviction for possession of a dangerous weapon, for the reasons discussed in the majority opinion, which I believe apply equally to show Virgil and Nicole's guilt on Count Two, I conclude that there was sufficient evidence to support the jury's verdict on this count.

Based on this same evidence, and the evidence discussed in majority opinion, I concur with the majority that there was sufficient evidence to find Virgil guilty as a principal to the underlying crime of assault in the

511

third degree. Title 14, section 297(2) provides, in pertinent part, that "[w]hoever . . . assaults another with a deadly weapon . . . shall be fined not less than $500 and not more than $3,000 or imprisoned not more than 5 years or both." In order to prove assault in the third degree, the Government had to show that Virgil assaulted Harvey with a deadly weapon or that Virgil encouraged or helped the perpetrator. Again, considering the evidence discussed above in the light most favorable to the Government, I believe that it was sufficient to support a jury determination that Virgil stabbed Harvey, or encouraged or helped Nicole or the unknown assailant to perpetrate the stabbing. Although Virgil points to conflicting evidence and challenges the credibility of some of the evidence, those were factual issues for the jury, not the appellate court, to resolve. *See Smith*, at 401.

In light of my conclusion that the trial court's jury charge was not plain error and that the evidence was sufficient to sustain the jury's verdict, I also believe it is necessary to address Nicole's assertion that the trial court erred in imposing an enhanced sentence under title 14, section 2251(a)(2)(B) for her conviction on Count Two. The trial court sentenced Nicole to ten years incarceration and a $10,000 fine for possessing a knife during the commission of a crime of violence. Although a defendant convicted of possessing a dangerous weapon may be incarcerated for a maximum of five years and fined $5,000 under title 14, section 2251(a)(2)(A), in this case the court sentenced Nicole pursuant to title 14, section 2251(a)(2)(B), which authorizes a sentence of up to fifteen years and a $10,000 fine if, *inter alia*, the defendant "has, possesses, bears, transports, carries or has under his proximate control, any such weapon during the commission or attempted commission of a crime of violence." Nicole argues that the enhanced sentence available under subsection 2251(a)(2)(B) "must be read to apply only to the possessor," of a dangerous weapon and does not apply to aiders and abettors. (Appellant Nicole Nanton's Br. 10.) I disagree.

Nicole cites to no legal authority to support her proposition, and the plain language of the statute makes no distinction between a principal charged with personally committing the offense and those charged with aiding and abetting. *See id*; V.I. CODE ANN. tit. 14, § 11(a) (defining principal). Because "the language of a statute is clear[,] the text of the statute is the end of the matter." *United States v. Introcaso*, 506 F.3d 260, 264 (3d Cir. 2007) (quoting *United States v. Jones*, 471 F.3d 478, 480 (3d

512

Cir. 2006). The Legislature made no distinction between principals who possess a dangerous weapon and aiders or abettors, and this Court will not create one.

For these reasons, I concur with the majority's conclusion that the evidence was sufficient to support Virgil's conviction under Count Three, but respectfully dissent from the majority's opinion that the Superior Court's instruction on Count Two constituted plain error that seriously affected the fairness, integrity, or public reputation of the proceedings.