The UNITED STATES of America,

v.

Nicholas A. STIRONE, Appellant.

No. 13824.

United States Court of Appeals Third Circuit.

Argued Sept. 18, 1962.

Decided Nov. 26, 1962.

Rehearing Denied Dec. 17, 1962.

Certiorari Denied March 4, 1963.

See 83 S.Ct. 881.

B. Nathaniel Richter, Philadelphia, Pa., (Charles A. Lord Seymour I. Toll, Richter, Levy, Lord, Toll & Cavanaugh, Philadelphia, Pa., on the brief), for appellant.

Robert G. Maysack, Attorney in Department of Justice, Washington, D. C., (Herbert J. Miller, Asst. Atty. Gen., Joseph S. Ammerman, U. S. Atty., Pittsburgh, Pa., Samuel J. Reich, Asst. U. S. Atty., Allen J. Krouse, Atty., Department of Justice, Washington, D. C., on the brief), for appellee.

Before MARIS, McLAUGHLIN and GANEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Appellant was convicted upon an indictment charging a violation of the Hobbs Act, 18 U.S.C. § 1951, in that he, as a labor leader, extorted $31,274.13 from one William G. Rider by the use of threats of labor trouble which would obstruct and prevent Rider from performing a valuable contract. Appellant's previous conviction upon the same indictment had been reversed, Stirone v. United States, 361 U. S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1959) because an issue not charged in the indictment was submitted to the jury in that trial.

The first contention is that appellant was tried under a void indictment. The argument suggests that since the Supreme Court has held that the indictment on the first trial was, in effect, amended, it became invalid; therefore the second trial was a nullity in the absence of the return of a new indictment. Appellant cites no relevant case. He relies on Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L. Ed. 849 (1886). As stated by the Court in Stirone v. United States, supra at 216–17, 80 S.Ct. at 272–73 the rule of Ex parte Bain is that "after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." Changes other than by the grand jury defeat the great importance which was attached to an indictment by grand jury at common law and which has been carried into our Constitution as a primary element of our jurisprudence. Ex parte Bain, supra at 10–11, 7 S.Ct. at 786; U.S.Const. Amend. 5. That much is crystal clear. The conclusion, however, which appellant would have us draw from this fundamental principle is a complete non sequitur.

In both Bain and Stirone the indictment was materially altered: in the former by deletion of a phrase, in the latter by admitting evidence which was beyond the scope of the indictment's charge. In each situation the basis for striking down the alteration on appeal was that the charging part of the indictment was changed and was no longer the indictment of the grand jury who presented it. The protection of the grand jury, to which the defendants were entitled had been denied at those trials. No such defect exists here. It is simply not the fact that

appellant at this second trial has been deprived of his "substantial right to be tried only on charges presented in an indictment returned by a grand jury," Stirone v. United States, supra at 217, 80 S.Ct. at 273 for he was tried solely upon the charges laid in the grand jury's indictment. Thus, the constitutional guarantee announced in the fifth amendment and further underscored by such opinions as Ex parte Bain, supra, and Stirone v. United States, supra, is left intact

■ Nor is there any merit in the further argument that it was necessary to resubmit the issue to a new grand jury for a new indictment. Ex parte Bain, supra, under its facts rightly calls for this, when that court quotes with approval from the language of Chief Justice Shaw in Commonwealth v. Drew, 3 Cush. 279 (Mass.1849), to the effect that where there is some defect in an indictment, as a wrong name or addition, "the proper course is for the grand jury to return a new indictment, avoiding the defects in the first." Since there are no defects in the present indictment to be corrected, there is no reason for resubmitting it. Cf. State v. Smith, 49 La.Ann. 1515, 22 So. 882 (1897).

Appellant next assigns as error several matters relating to the conduct of the trial and the sufficiency of the evidence. There was trial testimony that in September, 1951 Rider was in the ready mixed concrete business with a batching plant at Belle Vernon, Pennsylvania, on the premises of the Duquesne Slag Products Company from whom he was obligated to buy his sand and slag.[1] Some time early in that month he read in the newspapers that the construction firm of Ragnor-Benson, Inc., had been awarded a contract by Pittsburgh Steel Company to act as principal contractor for the construction of a steel mill. In an attempt to secure the concrete supply contract in connection with this, Rider made an appointment with the vice president of Ragnor-Benson, Jacob G. Kassab, to discuss the bid he had submitted and his chances of obtaining the job. Rider, accompanied by his wife, met with Kassab that night in the latter's home, at which time Kassab told Rider that he "had nothing to worry about," and that he "had the contract." This agreement between Rider and Ragnor-Benson was formalized by written contract of September 25, 1951. Rider's first pour on the work was made on September 13. Shortly afterwards, but prior to September 25, appellant, accompanied by Dierker, the president of Duquesne Slag Products, visited Rider at his plant. Rider testified that on this occasion appellant demanded that Rider pay him 50¢ a cubic yard for the concrete that went into the Ragnor-Benson operation. These payments were necessary if Rider was to "hold onto the contract and also to keep me out of labor trouble." Because of his fear of economic loss Rider acquiesced and thereafter paid appellant the amounts demanded. The numerous checks which Rider gave appellant pursuant to that arrangement were recorded by his wife in a special separate account as commissions. Appellant's defense was that he was on the west coast at the time of the alleged extortion and further, the payments represented true consideration for his promise to use his influence with Ragnor-Benson to secure the concrete sub-contract for Rider.

Appellant now asserts that the trial judge's questioning of witnesses was objectionable in that he "improperly injected himself into the case in aid of the prosecution."

■ Preliminarily we need only repeat what has by now become axiomatic in our federal system of jurisprudence. It is the right and duty of the judge to act in the interrogation of witnesses to the end that the truth emerge and be reflected in the judgment. Thus, if the issues are obscured or the testimony misunderstood, he is entitled to and should interrogate witnesses to help render understandable such matters. Glasser v. United States,

---

1. No question is raised on appeal concerning the interstate commerce aspects of this case.

315 U.S. 60, 62, 62 S.Ct. 457, 86 L.Ed. 680 (1941); Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1932); United States v. Amorosa, 167 F.2d 596, 600 (3 Cir.1948); Knapp v. Kinsey, 232 F.2d 458, 466 (6 Cir.), cert. denied, 352 U.S. 892, 77 S.Ct. 131, 1 L.Ed. 2d 86 (1956); United States v. Aaron, 190 F.2d 144, 146 (2d Cir.1951); Simon v. United States, 123 F.2d 80, 83 (4 Cir.), cert. denied, 314 U.S. 694, 62 S.Ct. 412, 86 L.Ed. 555 (1941); Fidelity & Deposit Co. of Maryland v. Bates, 76 F.2d 160, 170 (8 Cir.1935); United States v. Lee, 107 F.2d 522, 529 (7 Cir.), cert. denied, 309 U.S. 659, 60 S.Ct. 513, 84 L.Ed. 1008 (1939); Kettenback v. United States, 202 F. 377, 385 (9 Cir.), cert. denied, 229 U. S. 613, 33 S.Ct. 772, 57 L.Ed. 1352 (1913). There are instances where the bounds of judicial propriety have been overstepped, e. g., United States v. DeSisto, 289 F.2d 833 (2 Cir.1961); United States v. Quercia, supra; Knapp v. Kinsey, supra, however, in each question on review the paramount consideration is whether the judge has seen to it that all admissible evidence helpful to an intelligent understanding of the issues is before the jury to aid it in its deliberations.

▮ Judged by that standard we find no error in the five instances of trial court participation cited by appellant. We also note that these objections are being raised for the first time on appeal. Initially complaint is made of the court's questioning of Rider. Rider was being cross-examined as to the exchange which took place between himself and appellant at the time of the alleged extortion. In an attempt to clarify this line of inquiry the court asked: "What do I understand might happen to you, Mr. Rider with your contract, if you didn't pay the 50 cents?" Rider's response and further questions from the court elicited the fact that Rider was afraid that (1) he would lose his recently acquired contract with Ragnor-Benson and (2) he would not obtain any more contracts in the future. Appellant's objection to the admissibility of the latter statement is not well taken. It is well settled that testimony showing the state of mind of the victim is permitted in Hobbs Act cases. Bianchi v. United States, 219 F.2d 182, 192 (8 Cir.), cert. denied, 349 U.S. 915, 75 S.Ct. 604, 99 L.Ed. 1249 (1955); United States v. Compagna, 146 F.2d 524, 529 (2d Cir.), cert. denied, 324 U.S. 867, 65 S.Ct. 912, 89 L.Ed. 1422 (1945).

> "The gist of the unlawful act is extortion. Extortion involves a state of mind as an element of an offense under the Act. Unless there is some form of compulsion (either physical or fear) there is no crime under this Act. * * * It was, therefore, essential to show that such payment was under such compulsion. The existence of this compulsion might be proved in several ways but one proper way is to show the state of mind under which the committee acted * * *."

Nick v. United States, 122 F.2d 669, 671, 138 A.L.R. 791, (8 Cir.), cert. denied, 314 U.S. 687, 62 S.Ct. 302, 86 L.Ed. 550 (1941). As to the first half of Rider's response appellant objects that the question, for the first time, brought into the trial the disputed fact that Rider already had a contract and that he was afraid of losing it. This is not supported by the record. On direct, Rider had answered the same question of why appellant wanted the payments by saying: "Well it's to hold onto the contract and also to keep me out of labor trouble." On cross-examination counsel himself recognized this fact by asking "Well, now, during the course of this conversation in the car [with appellant], when was any mention made that you wouldn't be able to keep the contract with Ragnor-Benson," and again, "did he say that he would just tell Jake Kassab or Ragnor-Benson to take it away from you?" These queries produced additional evidence establishing the existence of the oral contract.

▮ Appellant also objects to the court's interrogating him concerning his story regarding the method of payment. On direct, counsel specifically asked appellant whether any mention was made be-

tween Rider and himself as to payment procedure. Appellant said that in response to a question from Rider regarding that, he replied " 'Why I don't know why you should ask me that. I think that, without reservation, you should pay me in a legitimate manner that you would normally pay anybody else,' because I intended to see to it that I reported it to the Internal Revenue and paid the taxes on it." This line of examination and the implications of appellant's statement that he intended to pay taxes on the money received was then dropped until the end of cross-examination, when the court tried to ascertain the meaning of appellant's statement. Appellant at this time claims that the court's questioning, pivoting on "Wasn't that a rather strange thing for you to say?", was highly prejudicial in that it "could well have" heavily weighted the jury's determination of whether this was a shake-down or sales commission arrangement. We cannot agree. Appellant's testimony on direct, which counsel brought out himself, was left in limbo so that the meaning and significance of the answer was doubtful and it was the court's right and duty to attempt to find out what appellant meant. The characterization which the court in passing gave to the answer would seem a normal reaction to the unusual response itself. In any event this minor incident did not result in substantial harm to appellant by itself or in combination with other alleged trial errors.

Appellant's third complaint relates to the direct examination of Mrs. Rider. We find no merit in his contention that the trial judge improperly admitted prejudicial hearsay by asking Mrs. Rider why her husband had said that he was making the payments to appellant. The record reveals that the court carefully instructed Mrs. Rider to what extent she could answer and expressly indicated to the jury that it could only consider this evidence as bearing on the state of mind of or the reason why Mr. Rider had said he was making the payments.

Appellant's two remaining objections on this phase of the appeal do not warrant discussion. On balance we find that "the questions of the trial judge above referred to were obviously for the purpose of developing facts helpful to an intelligent understanding of the matter not only by him but to the jury." United States v. Amorosa, supra at 600. The record as a whole reveals no improper participation or bias on the part of the district judge who conducted this difficult trial in a particularly even-handed manner.

Appellant alleges as reversible error that the charge of the trial court was too favorable to the government and failed to relate the evidence to the elements of the crime charged. No objections were made by defense counsel at the trial, despite the court's specific query whether there were any objections or additional matters on which counsel wished the jury instructed.

The charge carefully emphasized several times the presumption of appellant's innocence and the burden placed upon the government to establish his guilt by evidence beyond a reasonable doubt upon all material elements of the crime before a conviction was possible. The meaning of "reasonable doubt" was outlined most favorably to appellant. The particulars of the crime were tied to what the government had to prove beyond a reasonable doubt, again emphasizing that the jury must make that kind of finding regarding each part under the statute for conviction. The charge stated that the jury was the sole judge of the facts and the credibility of the witnesses. The various factors which might be looked to in determining the weight of testimony and credibility of a witness were named. It was pointed out that, in light of the conflicting stories told, the credibility of the witnesses was the crux of the matter. To illustrate this the charge referred to the direct conflict between Rider on the one side and Dierker and appellant on the other, as to whether the meeting in the car claimed by Rider ever occurred and listed the items which could be considered in making this decision.

The brunt of appellant's argument is that the court failed to give his

theory of defense to the jury. From this appellant would assume that its legal effect was to preclude the jury from considering his attempted explanations. That presupposes that the charge purported to be a review and summary of the evidence, which is not true. The charge was in essence a statement of the legal principles necessary to be found by the jury to exist, beyond a reasonable doubt, before it had the right to convict appellant. And the statutory elements were related to the facts adduced at the trial, which significantly distinguishes the circumstances before us from those found in McNello v. John B. Kelly, Inc., 283 F.2d 96 (3 Cir. 1960), referred to by appellant. In that suit, involving a negligence problem, the charge as to the law was made entirely in vacuuo and was not applied in any way to the facts tending to prove the issue of the defendant's liability. Specifically, we mention that it was not error to fail to give an instruction as to appellant's alibi in the absence of any request for it. Goldsby v. United States, 160 U.S. 70, 77, 16 S.Ct. 216, 40 L.Ed. 343 (1895); United States v. Tramaglino, 197 F.2d 928, 932 (2 Cir.), cert. denied, 344 U.S. 864, 73 S.Ct. 105, 97 L.Ed. 670 (1952). Appellant's further thought that the trial judge erred in not referring to appellant's unrefuted testimony that he had no jurisdiction over any of Rider's employees and thus Rider's fear must have been unreasonable is not well taken. See United States v. Varlack, 225 F.2d 665, 668, 670 (2 Cir.1955).

More fundamentally, we feel that the proposition which appellant now argues is not timely. The rule of this trial is well stated in Apel v. United States, 247 F.2d 277, 282–83 (8 Cir.1957) as follows:

"The evidence of a defendant in a criminal case is not subject to the limitation of required pleading and definitive issue, and in the effort made to create doubt generally on such a trial there often is no desire to have the case pinned down to a definite theory before the jury. On this practical basis, as well as for reasons of orderly procedure, the trial court ordinarily is entitled to have a defendant advise, by a tender of instructions, of whatever specific theory or theories, if any, he may finally choose to rely upon and wish to have pointed out to the jury.

"Here, the situation clearly was not one of such complexity or probable confusion as to make it necessary for the court, in the interest of justice, and without a tendered instruction, to point out specifically such theory or theories of defense as the court deemed capable of existing on the evidence, in order to insure understanding on the part of the jury. We do not feel that the jury could have failed, from the evidence and argument, to understand appellant's theories and contentions. Nor was the court's general charge such in its form or substance as could be said in any way to have left appellant's theory or theories impliedly deprecated or disparaged by the failure to make mention of them."

This appeal certainly does not fall into the area of exception noted above:[2] the trial was short, and, as appellant says in his brief, "there were very few important issues of fact that required jury determination * * *."

 Taking the charge as a whole and under the important circumstances that appellant, until now, had no objection to it,[3] we are satisfied that the court did

2. There is a possible second exception: "the sensitive defense of insanity". Apel v. United States, supra at 282; Holloway v. United States, 80 U.S.App.D.C. 3, 148 F.2d 665 (D.C.Cir.1945), cert. denied, 334 U.S. 852, 68 S.Ct. 1507, 92 L.Ed. 1774 (1948); Tatum v. United States, 88 U.S.

App.D.C. 386, 190 F.2d 615 (D.C.Cir. 1951).

3. Rule 30 of the Federal Rules of Criminal Procedure provides in pertinent part that:
 "At the close of the evidence or at such earlier time during the trial as

not commit reversible error in connection with this point. Cf. Goldsby v. United States, supra; Humes v. United States, 170 U.S. 210, 211–12, 18 S.Ct. 602, 42 L.Ed. 1011 (1898); United States v. Griffin, 176 F.2d 727, 730 (3 Cir.1949), cert. denied, 338 U.S. 952, 70 S.Ct. 478, 94 L.Ed. 588 (1950); United States v. Alfano, 152 F.2d 395, 397 (3 Cir.1945). The opinions on which appellant depends, Griego v. United States, 298 F.2d 845, 849 (10 Cir.1962); Smith v. United States, 230 F.2d 935, 939 (6 Cir.1956), are not opposed. As appellant accurately states, they stand for the general maxim that in a criminal case instructions are erroneous if they exclude from the jury an affirmative defense to which evidence has been received. The fatal defect in Griego was that the court wrongly interpreted a section of the statute charging the crime so as to effectively exclude the defense thereto. In Smith the court's charge misstated the defendant's position so that, in effect, his true defense was barred. The rule of those decisions has no bearing on our question.

The next major contention is that the charge was so confusing it removed from the jury's consideration the question of whether Rider was placed in fear by appellant's threats. An effort is made to bolster this by quoting two fragments of the charge. From the first, appellant concludes that the judge conveyed the unmistakable impression to the jury that he was convinced that Rider reasonably feared economic loss. Even that isolated instance cannot be soundly so interpreted. The judge, carefully outlining the crime, stated that its primary statutory element was "fear" and not "actual or threatened violence." [4] His statement "Well, in this case, I think it is fear," which immediately followed a quo-

tation from the pertinent section of the statute, is not at this stage to be twisted to mean that the issue of fear was removed from the jury's deliberation. This is demonstrated by his instruction which followed the reference to the need of proving fear of economic loss wherein he said: "Now if you find that to exist, under the statute, and beyond a reasonable doubt, why, then, extortion has been committed." With that mandate and several other statements throughout the charge the court sharply impressed upon the jury that unless it concluded that Rider feared economic loss if he did not comply with appellant's demands, appellant could not be found guilty under the indictment.

Appellant urges that the second fragment of the charge which he quotes substituted Dierker's and Kassab's fears of the appellant for those of Rider. That assertion has no support when the passage is read in its context. The court was referring to the possible influence which appellant might have over Dierker and Kassab solely in connection with their credibility as witnesses. The preceding portions of the charge, not mentioned by appellant, were to the effect that the credibility of the witnesses was for the determination of the jury. This provided the setting within which the portion objected to must be read. In addition, appellant contends that the last sentence of this part of the charge—"But the great conflict there is between Dierker, between Mr. and Mrs. Rider, Mr. Dierker and Mr. Stirone on that proposition"—eliminated the testimony of Kassab from the jury's consideration. He urges that this was fundamental error because the "great conflict" referred to was the question of whether Rider understood at Kassab's home that he already had the contract, and therefore Kassab's mentioned testi-

the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. * * * No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the

matter to which he objects and the grounds of his objection. * * *"

4. Title 18 U.S.C. § 1951(b) (2) provides: "The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."

mony was crucial. However, at the beginning of the same paragraph the court says:

> "Now there are some things in this case, the contentions for instance, that Mr. and Mrs. Rider, Mr. Rider particularly said that he came down there [the batching plant] in a car with Mr. Dierker. He was told then what he was to do. You heard that testimony. Mr. Dierker said no such thing happened; so did Mr. Stirone. *That's a direct conflict.*" (Emphasis supplied).

This of course is the "great conflict" referred to later on in the paragraph.

All of the above discussion of the charge convincingly illustrates that the latter must be construed in its entirety and not by disjointed and set apart phrases. Pomerantz v. United States, 51 F.2d 911, 913 (3 Cir.1931); Boyd v. United States, 271 U.S. 104, 107, 46 S.Ct. 442, 70 L.Ed. 857 (1925). On that solid premise we find that there was no tendency in the charge to mislead the jury.

Finally, appellant maintains that he may have been convicted on evidence outside the scope of the indictment, and that Rider's testimony was insufficient to support a conviction.

He first urges that he may have been convicted in violation of the precept of United States v. Stirone, supra, by reason of Rider's testimony that he was afraid that he would lose future contracts as well as the Ragnor-Benson contract. This is merely a restatement of his second point, supra. As we there said, that type of evidence is proper in Hobbs Act trials going as it does to the state of mind of the victim. Bianchi v. United States, supra; United States v. Compagna, supra; Nick v. United States, supra. And it is to be remembered that the charge contained no instruction or implication that appellant could be convicted by reason of Rider's fear of losing future contracts. Actually, the court made it very definite by reading the express wording of the indictment and further instructions, that conviction was only possible if the jury first found "fear of loss of his contract" with Ragnor-Benson.

 On his challenge to the sufficiency of the proof, appellant complains of alleged conflicts in the testimony of Rider, the government's key witness, as to whether there was an existing contract with Ragnor-Benson at the time of the extortion. The circumstances that a witness' testimony may to some extent be self-contradictory does not prevent its constituting substantial evidence. Ryan v. United States, 99 F.2d 864, 868 (8 Cir. 1938); Craig v. United States, 81 F.2d 816, 818 (9 Cir.1936); cf. Yellow Cab Co. of Philadelphia v. Kelly, 62 F.2d 1032 (3 Cir.1933). Appellant tells of two instances of so-called contradictory testimony. In the first he would have it that Rider testified on cross-examination that he made the first pour on the Ragnor-Benson job before the oral agreement, in contradiction of his prior story that he had the contract and then made the pour. The record does not reveal the claimed positive contradiction, for Rider's response that he made the pour "Before that" could well be interpreted to mean before the written contract of September 25, concerning which he had just been talking. Fault is also found with Rider's statement, "if I didn't get the contract and hold onto it, why I was in hot water," which appellant now says is inconsistent with Rider's other testimony that he did have an oral contract at the time of appellant's threats. Again there is an opposite inference to be drawn, namely, that if Rider could not hold on to the contract once he had it, he was "in hot water." By placing the emphasis on the "holding on" portion of the sentence appellant's version completely fails. Appellant's main arguments to us concern questions of evidence which were properly submitted to the jury and properly decided by that body. The reasonable doubt which will prevent conviction must be the jury's doubt and not that of this court. Craig v. United States, supra at 827, of; Felder v. United States, 9 F.2d 872, 875 (2 Cir.1925), cert. denied, 270 U.S. 648, 46 S.Ct. 348, 70 L.Ed. 779 (1926). Putting

it mildly, there was nothing inherently unbelievable about Rider's testimony, and if the jury believed, as it must have, his evidence is sufficient to support the conviction. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Brill, 270 F.2d 525, 527 (3 Cir.1959); United States v. Giuliano, 263 F.2d 582, 584 (3d Cir. 1959).

Rider testified on several occasions that the payments were made so that he could "hold onto the contract" and that he "couldn't afford to lose it." He stated that at the conclusion of his visit with Kassab he was told that he "had nothing to worry about," he "had the contract." He and his wife testified to the September 13 pour made on the Ragnor-Benson job, a fact which the jury could find was consistent with a pre-existing contract.

Clearly, there was substantial, valid evidence to sustain appellant's conviction. Cf. United States v. Giuliano, supra at 583; United States v. Allard, 240 F.2d 840, 841 (3 Cir.1957). There was no reversible error.

The judgment of the district court will be affirmed.