**ASHLEY WILLIAMS, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2007-0008

Supreme Court of the Virgin Islands

September 12, 2011

Opinion, such as its claim that P.I.D. should be dismissed from the litigation because it is not a real party in interest.

721

722

HARRIS R. ANGELL, JR., ESQ., St. Thomas, USVI, *Attorney for Appellant.*

RICHARD S. DAVIS, ESQ., V.I. Department of Justice, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(September 12, 2011)

SWAN, J. Ashley Williams ("Williams") requests that this Court reverse his convictions on two counts of Rape in the First Degree and on one count of Unlawful Sexual Contact in the First Degree.[1] Williams alleges

---

[1] 14 V.I.C. §1701(3) provides that rape in the first degree is:

an act of sexual intercourse or sodomy with a person —

. . . .

(3) when the person's resistance is prevented by fear of immediate and great bodily harm which the person has reasonable cause to believe will be inflicted upon the person . . . .

14 V.I.C. §1708 (4) defines unlawful sexual contact in the first degree as:

that the trial court erred when it failed to include an instruction on consent to sodomy[2] in its final jury instructions and when it failed to grant his Rule 29 Motion for Judgment of Acquittal. For the reasons elucidated below, we will affirm both the trial court's Judgment and Williams' convictions.

## I. FACTS AND PROCEDURAL HISTORY

On November 16, 2005, Brett Thompson ("Thompson"), a 44-year-old homeless man, was in the area of Simmonds Alley on St. Thomas, seeking drugs, when he happenstancely met Williams. Thompson asked Williams if he had some crack-cocaine that he, Thompson, could smoke. Williams informed Thompson that he had a supply at his home nearby. Thompson accompanied Williams to his car, and immediately thereafter, they drove to Williams' home.

Upon arriving, both men entered the yard area of Williams' home through a gate. Williams locked the gate to the yard behind them. After they entered the home, Williams securely locked the front door with a dead bolt. As Thompson stepped into Williams' house, Williams angrily told Thompson, "You're going to be my bitch." Thereafter, Thompson accompanied Williams as they walked through the kitchen into a den and towards the back of the den, where a bedroom was located. While Thompson sat on the bed, Williams began to talk to him about sex. However, Thompson told Williams that he was "not into it." Williams provided Thompson with some crack, and Thompson smoked it. When Thompson informed Williams that the crack was a bit small, Williams told Thompson that he was greedy, as he menacingly raised his hand and struck Thompson about his face a few times. Thereafter, Williams exited the bedroom area and proceeded to the kitchen to search for something.

A few moments later, Thompson also left the bedroom to look for Williams. When Thompson found Williams in the kitchen, Williams said

---

sexual contact with a person not the perpetrator's spouse —

. . . .

(4) when the other person is threatened or placed in fear of imminent and serious bodily injury; . . .

[2] 14 V.I.C. §1699 defines sodomy as:

carnal knowledge of any person by the mouth, i.e., cunnilingus or fellatio; or by the anus; or by submission to the same; or by any insertion, however slight, of any object into a person's anus, excluding such insertion for medical treatment or examination.

to him, "I thought I told you to stay in the bedroom, bitch?" Upon his return to the bedroom, Thompson decided to leave the house. In his attempt to leave the house, Thompson realized that the bedroom windows were barricaded by bars, thereby precluding his escape through the windows. Thompson also knew that Williams had locked the gate to the yard area upon their entry on the premises and had locked the deadbolt on the door to the house after they entered, thereby obstructing his ability to escape through those entrances. Afraid of what might happen if Williams caught him attempting to leave the house, Thompson sat on the bed until Williams returned.

Shortly after, Williams returned to the bedroom with a large rock of crack and instructed Thompson to undress. With Thompson and Williams both naked, Williams gave Thompson a pipe with the crack and ordered Thompson to get on the bed. As Thompson lay on his back, Williams grabbed Thompson's ankle with one hand and pushed his leg up in the air while he lit the pipe in Thompson's mouth with the other hand. While Thompson was smoking the pipe, Williams unsuccessfully attempted acts of anal intercourse with Thompson. Thompson began to shriek as he continuously protested Williams' actions. However, Williams callously ignored Thompson's protest and ordered him to "shut up." Suddenly, Williams interrupted his sodomizing of Thompson and proceeded to search for something. Upon retrieving a wooden stick, Williams resumed his sodomizing of Thompson by once again grabbing Thompson's legs, thrusting them into the air, and brutally inserting the stick into Thompson's anus. Williams also attempted to perform oral sex on Thompson, but Thompson was unable to achieve an erection.

Eventually, Williams ordered Thompson to dress himself and drove Thompson to the Western Cemetery, instructing him not to return to his house and threatening to kill Thompson if he ever divulged to anyone what transpired between them at the house. The next morning, Thompson walked to a community service group's facility, where personnel at the facility contacted the police. Thompson was transported to a hospital where he was examined. Medical personnel noticed that he appeared to be experiencing excruciating discomfort and had sustained contusions to the left side of his face, to the underside area of his penis, and to the area around his anal passage. The emergency room's staff conducted a rape kit test upon Thompson.

At approximately 9:00 a.m. on November 17, 2005, detectives were dispatched to the hospital to investigate a report that Thompson had been raped. After Thompson's examination at the hospital, the detectives escorted him to the Investigation Bureau, where he was interviewed and was provided a book of mug-shot photographs from which he was able to positively identify Williams as his assailant. Additionally, Thompson provided the detectives with the exact location of Williams' house, as well as particularized details concerning various objects that were located in the house.

The detectives proceeded to Williams' residence, where they discovered Williams standing outside his house. The detectives accosted Williams, took him into custody, and transported him to the Investigation Bureau. During his police interview, Williams gave the detectives permission to search his house. The detectives returned to the house with a forensic unit where they discovered specific items that Thompson had earlier described, including the stick Williams allegedly utilized to sodomize Thompson. The forensic unit collected evidence from Williams' house and from Thompson's belongings.

On November 17, 2006, the People of the Virgin Islands ("People") charged Williams in a five-count Amended Information with the following crimes: (1) one count of False Imprisonment, a violation of title 14, section 1051 of the Virgin Islands Code (Count One); (2) two counts of Rape in the First Degree, a violation of title 14, section 1701(3) of the Virgin Islands Code (Counts Two and Three); (3) one count of First Degree Assault, a violation of title 14, section 295(3) of the Virgin Islands Code (Count Four); and (4) one count of First Degree Unlawful Sexual Contact, a violation of title 14, section 1708(4) of the Virgin Islands Code (Count Five). After a trial, the jury returned a verdict of "Not Guilty" on Count One of the Amended Information. However, the jury returned verdicts of "Guilty" on Counts Two, Three, Four, and Five of the Amended Information. On February 6, 2007, the court entered its Judgment on the convictions and the same day Williams timely appealed to this Court.

## II. JURISDICTION

Title 4, section 32(a) of the Virgin Islands Code states that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as

otherwise provided by law." A final order is a judgment from a court which ends the litigation on the merits, leaving nothing else for the court to do except execute the judgment. *In re Truong*, 513 F.3d 91, 94 (3d Cir. 2008) (citing *Bethel v. McAllister Bros., Inc.*, 81 F.3d 376, 381 (3d Cir. 1996)). The Superior Court entered a final judgment in this matter on February 2, 2007.

## III. ISSUES AND STANDARD OF REVIEW

On appeal Williams contends that the trial court erred when it refused to include an instruction on consent in the final jury instructions on First Degree Rape and when it failed to grant Williams' Rule 29(a) Motion for Judgment of Acquittal. The standard of review for this Court's examination of the Superior Court's application of law is plenary, while the trial court's findings of fact are reviewed for clear error. *Blyden v. People*, 53 V.I. 637, 646 (V.I. 2010); *Pell v. E.I. Dupont de Nemours & Co. Inc.*, 539 F.3d 292, 300 (3d Cir. 2008). We review Williams' claim, that the final jury instructions should have included an instruction on consent, for abuse of discretion. *Phillips v. People*, 51 V.I. 258, 269 (V.I. 2009). If a party fails to adequately object to jury instructions, we will review the instructions for plain error. *Francis v. People*, 52 V.I. 381, 390 (V.I. 2009); *United States v. Petersen*, 622 F.3d 196, 202, 54 V.I. 929 (3d Cir. 2010). Thus, we will reverse a trial court's rulings only where the error was fundamental and highly prejudicial, such that the instructions failed to provide the jury with adequate guidance and our refusal to consider the issue would result in a miscarriage of justice. *See, Farrell v. People*, 54 V.I. 600, 618-19 (V.I. 2011).

## IV. DISCUSSION

### A. The trial court did not err when it failed to give the jury final instructions on whether Thompson consented to engage in sodomy with Williams

On appeal, Williams asserts that the trial court erred when it failed to *sua sponte* include in its final jury instructions, an instruction on the affirmative defense of consent. Essentially, Williams contends that sufficient evidence was presented at trial to support a finding that the sexual activities between the two men were consensual. Therefore, Williams asserts that the trial court's failure to include a separate jury

instruction regarding consent rendered the trial court's proceedings unfair and violated his due process rights. Rule 30(d) of the Federal Rules of Criminal Procedure provides that: "A party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate." Failure to object in accordance with Rule 30 precludes appellate review except for plain error. *Phipps v. People*, 54 V.I. 543, 546 (V.I. 2011); *Nanton v. People*, 52 V.I. 466, 475 (V.I. 2009). Williams admittedly did not object to the jury instructions during trial. Therefore, we will only review his claim for plain error.

 For there to be plain error warranting reversal of the jury's verdict, there must be (1) an error, (2) that is plain, and (3) that affects substantial rights. *Phipps v. People*, 54 V.I. at 546 (quoting *Johnson v. United States*, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997)). If the action of the trial court satisfies these three elements, this Court will address the error only if it seriously affects the fairness, integrity or public reputation of the judicial proceedings. *Farrell*, 54 V.I. at 608-09.

In his brief Williams admittedly states that "[a]t no time did appellant's counsel state any objection to the contested instruction." (Appellant's Br. 8.) Williams argues that although his trial counsel did not request an instruction on consent, the trial court should have issued an instruction *sua sponte*. (Appellant's Br. 7.) To support his argument that the trial court should have issued an instruction on consent despite Williams' failure to request an instruction or object to its exclusion, Williams cites *United States v. Stirone*, 311 F.2d 277, 283 (3d Cir. 1962) for the proposition that "jury instructions are erroneous if they exclude from the jury an affirmative defense to which evidence has been received."[3] Williams asserts that sufficient evidence was presented at trial that Thompson had consensual sex with him; and that, as a result, the trial court was required to include the issue of consent in the final instructions to the jury. However, contrary to Williams' assertions, the Third Circuit upheld the convictions of the appellant in *Stirone* and noted that — as in

---

[3] We also note that the Third Circuit explained in *Stirone* that the two isolated decisions that reversed trial court convictions by applying this concept rested on the trial courts' misapplication of the law in the final jury instructions, a concern that was not applicable in *Stirone* nor applicable here, because the charge actually given adequately described the legal elements of the offense charged.

the present case — Stirone had not requested a jury instruction on the issue of consent nor objected to the trial court's proposed jury instruction. Importantly, Williams injudiciously relies upon this statement from *Stirone* and ignores that it was not a holding of the Court. The Third Circuit merely cited this doctrine in dismissing its application in *Stirone*. The Third Circuit held that the trial court had properly instructed the jury on the elements of the crime which negated Stirone's defense; therefore, there was no plain error by the trial court. *Id.* at 282-83. For the same reasons as expressed in *Stirone*, the doctrine that Williams cites in his brief is not applicable to his case.

Like the circumstances in *Stirone*, despite Williams' failure to make a formal request for an instruction addressing the issue of consent, the concept of consent is inherently addressed in the elements of the crime charged and in the final instructions imparted to the jury. Therefore, our inquiry as to whether the trial court committed plain error in failing to instruct on consent on its own initiative rests on the adequacy of the instructions given by the trial court in addressing the elements of the pertinent statutes. Title 14, section 1701(3) of the Virgin Islands Code, states that "[w]hoever perpetrates an act of sexual intercourse or sodomy with a person . . . when the person's resistance is prevented by fear of immediate and great bodily harm which the person has reasonable cause to believe will be inflicted upon the person" is guilty of rape in the first degree.

In a prosecution for rape, it is the duty of the trial court to instruct the jury on the applicable law, setting forth the essential elements of the crime. Specifically, instructions on the elements of rape should fairly and adequately inform the jury of the legal standard by which the defendant's guilt or innocence is to be determined and should contain accurate statements and explanations of the applicable principles of law. 75 C.J.S. Rape § 105. The instructions of the court must apply to the case consistent with the evidence, and they should conform to the indictment or information. *See United States v. Martin*, 528 F.3d 746, 752 (10th Cir. 2008).

In this case, the trial court provided jury instructions on the elements of the charges as listed in the statute.[4] Although the language of

---

[4] The Superior Court delivered the following instructions:

section 1701(3) is devoid of the words "consent" and "lack of consent," the statutory language, "when the person's resistance is prevented by fear of immediate and great bodily harm," is synonymous with a "lack of consent." The dictionary definition of consent is the following:

---

Defendant, Mr. Ashley Williams, is charged in Count Two of the Amended Information with **Rape in the First Degree** in violation of Title 14 V.I.C. § 1701(3) which provides:

A person is guilty of **Rape in the First Degree** when he/she perpetrates an act of sexual intercourse or sodomy with another person when the person's *resistance is prevented by fear* of immediate and great bodily harm which the person has reasonable cause to believe will be inflicted upon him/her.

To prove the Defendant "Guilty" of Rape in the First Degree, the People must prove beyond a reasonable doubt, each of the following elements:

1. The act charged herein occurred on or about November 17, 2005.
2. The act charged occurred in St. Thomas, U.S. Virgin Islands.
3. The Defendant perpetrated an act of sodomy on Mr. Thompson, to wit: he penetrated Mr. Thompson [sic] anus with his penis when his *resistance was prevented* by fear of immediate and great bodily harm which he had reasonable cause to believe would be inflicted upon him.

You may not find the Defendant "Guilty" unless you are satisfied that the People have established every essential element of the offense, as explained in this charge, beyond a reasonable doubt.

. . . .

Defendant, Mr. Ashley Williams, is charged in Count Three of the Amended Information with **Rape in the First Degree** in violation of Title 14 V.I.C. § 1701(3) which provides:

A person is "Guilty" of **Rape in the First Degree** when he perpetrates an act of sexual intercourse or sodomy with another person when that person's *resistance is prevented* by fear of immediate and great bodily harm which the person has reasonable cause to believe will be inflicted upon him/her.

To prove the Defendant "Guilty" of Rape in the First Degree, the People must prove beyond a reasonable doubt each of the following elements:

1. The act charged herein occurred on or about November 17, 2005.
2. The act charged occurred in St. Thomas, U.S. Virgin Islands.
3. The Defendant perpetrated an act of sodomy on a person not his spouse, to wit: he inserted Mr. Thompson's penis into his mouth when his *resistance was prevented* by fear of immediate and great bodily harm which he had reasonable cause to believe would be inflicted on him.

You may not find the Defendant "Guilty" unless you are satisfied that the People have established every essential element of the offense, as explained in this charge, beyond a reasonable doubt.

(J.A. at 76-78.) (emphasis added).

[C]ompliance in or approval of what is done or proposed by another; *speciff[ically]*: the voluntary agreement or acquiescence by a person of age or with requisite mental capacity who is not under duress or coercion and usu[ally] who has knowledge or understanding . . . .

*Merriam-Webster's Dictionary of Law*, 97 (Collector's ed. 2005). Obviously, the words defining consent, "acquiescence by a person of age or with requisite mental capacity who is not under duress or coercion," are antonymous with words in section 1701(3), namely, "resistance is prevented by fear of immediate and great bodily harm." Therefore, a finding that Thompson's "resistance [wa]s prevented by fear of immediate and great bodily harm," would necessarily be the functional equivalent[5] of a finding that there was no consent by Thompson. Accordingly, at William's house Thompson acted under "duress or coercion,"[6] which constitutes a lack of consent.

The United States Court of Appeals for the Tenth Circuit was also presented with the issue of consent in a rape case, *United States v. Martin*, 528 F.3d 746 (10th Cir. 2008). In *Martin*, defense counsel requested an instruction regarding the victim's consent to sexual intercourse and tendered his own proposed jury instructions on the issue. *Id.* at 752-53. The Tenth Circuit noted that the instructions to the jury did not include the word "consent"; however, the Court recognized that if the statute requires that resistance of the victim be prevented by force or violence, "the instructions taken as a whole correctly convey that the sex must be nonconsensual." *Id.* at 753. The Court specifically held, "it is not error to refuse to give a requested instruction if the same subject matter is

---

[5] The United States Supreme Court has spelled out the doctrine of functional equivalency in criminal jury instructions as it applies to elements and defenses as follows:

> When the predicate facts relied upon in the instruction, or other facts necessarily found by the jury, are so closely related to the ultimate fact to be presumed that no rational jury could find those facts without also finding that ultimate fact, making those findings is *functionally equivalent* to finding the element required to be presumed.

*See Carella v. California*, 491 U.S. 263, 271, 109 S. Ct. 2419, 105 L. Ed. 2d 218 (1989).

[6] Duress is defined as "wrongful and usu[ally] unlawful compulsion (as threats of physical violence) that induces a person to act against his or her will . . ." *Merriam-Webster's Dictionary of Law*, 153 (Collector's ed. 2005), and coercion is defined as "the use of express or implied threats of violence or reprisal (as discharge from employment) or other intimidating behavior that puts a person in immediate fear of consequences in order to compel that person to act against his or her will . . . ." *Id.* at 82.

adequately covered in the general instructions." *Id.* at 753 (quoting *United States v. Cerrato-Reyes*, 176 F.3d 1253, 1262 (10th Cir. 1999)) (internal quotation marks omitted). The Court further opined that "[b]y requiring the jury to find that the defendant caused the victim to engage in a sexual act . . . by using force . . . or by threatening . . . death or serious bodily injury, the . . . court's instructions adequately covered the issue of lack of consent." *Id.* (internal quotation marks omitted).

In this case the jury instructions enumerated the elements of the crime in Counts Two and Three of the Amended Information. The trial court instructed the jury that before they could find Williams guilty of Count Two, Rape in the First Degree, they must find that "[t]he Defendant . . . penetrated Mr. Thompson [sic] anus with his penis *when his resistance was prevented by fear of immediate and great bodily harm* which he had reasonable cause to believe would be inflicted upon him." (J.A. at 76.) (emphasis added).

■ ■ The words "when his resistance was prevented by fear of immediate and great bodily harm" are synonymous with and functionally equivalent to a lack of consent. When providing the instructions to the jury, the trial court was not required to use the synonym selected by Williams (i.e. "consent"), but rather, the trial court was only required to correctly state the law, which it did. *See United States v. Flores*, 454 F.3d 149, 161 (3d Cir. 2006).

> It is well-settled that the trial judge retains discretion to determine the language of the jury charge. So long as the court conveys the required meaning, the particular words used are irrelevant. The district court is not obligated to use the language the defendant proffers.

*Id.* (citations and internal quotation marks omitted). Thus, the trial court's failure to use the word "consent" in its final instructions did not result in prejudice or influence on the verdicts, nor did such failure constitute a violation of Williams' constitutional rights. Consequently, we conclude that there was no error in the trial court's failure to separately instruct the jury on the issue of consent on the rape charges because the instructions that were given by the court, on section 1701(3), intrinsically and adequately addressed the issue of consent.

## B. The trial court did not err when it failed to grant Williams' Rule 29(a) Motion for Judgment of Acquittal

■ Under Rule 29(a) of the Federal Rules of Criminal Procedure, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." At the end of the People's case, Williams' counsel made a Rule 29(a) Motion for Judgment of Acquittal, asserting that there was insufficient evidence to convict Williams of the charges in the original Information.[7] Pursuant to Rule 29(b)[8] of the Federal Rules of Criminal Procedure, the Superior Court reserved its decision on the Motion and proceeded with the trial. When the trial reconvened, and immediately before the jury instructions conference, the judge made his ruling on the Rule 29 Motion.

> THE COURT: . . . This is the jury instructions conference. But before we do that I have some rulings to make with respect to the summations.
>
> I've decided to grant the Defendant's Rule 29 motion with respect to Counts II and III. And with respect to Count VI and VIII, I will dismiss those Counts as being duplicitous and multiplicities.
>
> . . . .
>
> So, the Court will not go forward with those counts. That is Counts, II, III, VI, and VIII and will Order that the Government file an amended Information to take to the jury.

---

[7] The charges in the original Information were as follows:

Count One: [False Imprisonment]; Count Two: [Aggravated Rape in the First Degree]; Count Three: [Using of a Dangerous Weapon During the Commission of a Crime of Violence]; Count Four: [Rape in the First Degree]; Count Five: [Rape in the First Degree]; Count Six: [First Degree Assault] Count Seven: [First Degree Assault]; Count Eight: [Using of a Dangerous Weapon During the Commission of a Crime of Violence]. (J.A. at 66-68).

[8] Rule 29(b) of the Federal Rules of Criminal Procedure provides the following:

The court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict. If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved.

(J.A. at 58.) Although the trial judge did not explicitly refer to Counts Four and Five in his ruling, it is implicit in his ruling that he denied the Motion on those counts when he allowed those counts to go to the jury for consideration and verdicts under an amended Information. Where a Rule 29 Motion for Judgment of Acquittal on eight counts of an information is made, and the trial court grants the motion as to some counts, dismisses other counts, and allows the remaining counts to go to the jury for deliberation and verdicts, the unavoidable conclusion is that the counts which went before the jury for deliberation and verdicts inherently survived the court's ruling on the Rule 29 Motion. Therefore, we reject Williams' contention that the judge failed to rule on Williams' Rule 29 Motion for Judgment of Acquittal.

██ ██ The trial court's failure to grant Williams' Rule 29 Motion on Counts Four and Five was not error. Under a Rule 29 Motion for Judgment of Acquittal, we must determine whether there is sufficient evidence to sustain a conviction. *United States v. Carbo*, 572 F.3d 112, 113 (3d Cir. 2009). Therefore, "[w]e do not weigh the evidence or determine the credibility of the witness[es]." *United States v. Jones*, 566 F.3d 353, 361 (3d Cir. 2009). By exercising a highly deferential standard, *id.*, and viewing the evidence in the light most favorable to the People, it is unquestionable that the evidence was more than sufficient to support a finding of guilt beyond a reasonable doubt. For example, the People presented testimony from the hospital's staff that medically treated Thompson, who confirmed that he was sexually assaulted. The People also presented the testimony of the detectives who investigated the charges against Williams. Most importantly, the People presented Thompson's unimpeached testimony of the sexual assault upon him by Williams, including his protestation of the sexual assault and Thompson's inability to escape from Williams' home. It is noteworthy that Williams assaulted Thompson immediately before or during the sodomizing, as confirmed by the medical finding of contusions to Thompson's face. Likewise, we cannot ignore the fact that upon their leaving Williams' home, he threatened to kill Thompson if he divulged to anyone what Williams did to him at the house.

In reviewing Williams' Rule 29 Motion for Judgment of Acquittal, we will "sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Carbo*, 572 F.3d at 113. In this case, a rational juror could find that there was sufficient evidence to support the essential elements of the crime in

section 1701(3). Therefore, we conclude that Williams failed to identify any reversible error.

## V. CONCLUSION

After reviewing the entire record before us and considering the statutory language of the crimes of rape and unlawful sexual contact, we conclude that on this record it was not error for the trial court to fail to give an instruction, *sua sponte*, on the issue of consent. We find no basis to disturb the jury's guilty verdicts. Therefore, we affirm the Superior Court's judgment and the jury's verdicts.